ACCEPTED
01-15-00423-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/8/2015 10:13:28 AM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00423-CV**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/8/2015 10:13:28 AM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals
For the First Judicial District of Texas
Houston, Texas

In re 8650 Frisco, LLC; Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues, Relators

The Honorable Jaclanel McFarland,
133rd Judicial District Court of Harris County, Texas, Respondent
Arising out of Cause No. 2014-10896

**Real Parties in Interest's Response to Motion for Emergency Temporary Relief to Stay Action by the Trial Court**

| **Hawash Meade Gaston Neese & Cicack LLP** | **Stephens & Domnitz, PLLC** | **Dykema Cox Smith** |
|---|---|---|
| Andrew K. Meade State Bar No. 24032854 Samuel B. Haren State Bar No. 24059899 2118 Smith Street Houston, Texas 77002 713-658-9001 (phone) 713-658-9011 (fax) ameade@hmgnc.com sharen@hmgnc.com | Kelly D. Stephens State Bar No. 19158300 P.O. Box 79734 Houston, Texas 77279 281-394-3287 (phone) 832-476-5460 (fax) kstephens@stephensdomnitz.com | David Kinder State Bar No. 11432550 112 East Pecan Street, Suite 1800 San Antonio, Texas 78205 210-554-5500 (phone) 210-226-8395 (fax) |

## Background

Real Parties in Interest ("Los Cucos") have a pending claim against Relators ("8650 Frisco") for breach of the parties' settlement agreement (the "Settlement Agreement"). *See* Exhibit 1, Fourth Amended Petition at ¶¶ 32–40. Under the Settlement Agreement, 8650 Frisco is required to pay $900,000 to Los Cucos over a period of five years. *Id.* at ¶ 33. Los Cucos' suit against 8650 Frisco is premised, in part, on 8650 Frisco's refusal to execute a promissory note and UCC-1 form. *See id.* at ¶¶ 34–36. As a result, Los Cucos has taken-on an unbargained-for credit risk. The magnitude of this risk—and the attendant harm and damages resulting therefrom—hinges on 8650 Frisco's financial condition. Los Cucos seeks damages and, in the alternative, specific performance of 8650 Frisco's obligation to execute the relevant documents. *See id.* at ¶ 42; Exhibit 2, Supplement to Fourth Amended Petition at ¶ 3.

Over a year ago, Los Cucos requested that 8650 Frisco produce certain financial and accounting documents (the "Financial Documents"). The Court ordered 8650 Frisco to produce the Financial Documents on June 13, 2014; July 28, 2014; April 1, 2015; and April 27, 2015. *See* Exhibit 3, Hearing Transcript at 23:2–4; Exhibit 4, Order on Third Motion to Compel; Exhibit 5, Order Granting in Part and Denying in Part Motion to Enforce the Court's Order; Exhibit 6, Order Granting Plaintiffs' Third Motion to Enforce the Court's Order (the "April 27

1

Order"). The last of these four orders included (1) a monetary sanction of $1,000 and (2) a finding conclusively establishing the irreparable harm element of Los Cucos' specific performance claim. *See* Exhibit 6, April 27 Order.

Los Cucos believes that 8650 Frisco still has not complied with the April 27 Order. *See* Exhibit 7, Fourth Motion to Enforce the Court's Order and for Sanctions. Los Cucos has filed yet another motion to enforce the trial court's order; that motion is set for hearing on May 18, 2015. *See* Exhibit 8, Notice of Hearing.

### Discussion

8650 Frisco's Motion for Emergency Temporary Relief to Stay Action by the Trial Court (the "Motion") is factually incorrect and legally insufficient. As demonstrated below, the Motion should be denied in its entirety and the trial court should be permitted to continue working toward a resolution of this case.

### I. 8650 Frisco's Motion misstates the facts.

8650 Frisco's Motion contains numerous factual misstatements. First, 8650 Frisco flatly asserts that the Financial Documents "have no relevance to the live pleading on file with the trial court." Motion at ¶ 7. This is incorrect as 8650 Frisco's financial condition is relevant to assessing the harm/damages caused by 8650 Frisco's breach of the Settlement Agreement.[1]

---

[1] In fact, 8650 Frisco has a pending no-evidence motion for summary judgment on this exact issue, and Los Cucos requires the Financial Documents in order to fully respond thereto. *See* Exhibit 9, No-Evidence Motion for Summary Judgment at ¶ 13; Exhibit 10, Los Cucos' Supplemental Response at 1–2.

8650 Frisco next complains that the trial court "conclusively establish[ed] an unpleaded issue in favor of [Los Cucos]." Motion at ¶ 8. This is a reference to the irreparable harm element of Los Cucos' request for specific performance. *Compare* Exhibit 6, April 27 Order *and* Exhibit 2, Supplement to Fourth Amended Petition at ¶ 3. In both its Motion and its petition for writ of mandamus, 8650 Frisco appears to have simply forgotten that Los Cucos has sought specific performance.

8650 Frisco further complains that it had already produced the Financial Documents "twice previously." Motion at ¶ 9. If this were true, 8650 Frisco could avoid any harm—let alone irreparable harm—by simply sending the documents to a courier and having the courier hand deliver those documents before the May 18, 2015 hearing. In truth, however, the April 27 Order was issued precisely because 8650 Frisco's prior attempts at production were incomplete. 8650 Frisco has not produced the requested Financial Documents, and any future complete production would be the first.

8650 Frisco next complains that the trial court signed the April 27 Order "in the presence of Counsel for [Los Cucos] but outside the presence of [8650 Frisco's] attorney." Motion at ¶ 10. Because 8650 Frisco's attorney chose to appear telephonically, the entire hearing occurred outside of his presence. Moreover, despite the nefarious implication 8650 Frisco seeks to make, the Court

merely signed the proposed order filed by Los Cucos with its Motion to Enforce. *Compare* Exhibit 6, April 27 Order *and* Exhibit 11, Proposed Order.

Finally, 8650 Frisco complains that Los Cucos' Fourth Motion to Enforce the Court's Order "demanded that the [trial court] strike [8650 Frisco's] pleadings for failure to comply" with the April 27 Order. Motion at ¶ 12. But Exhibit B to the Motion plainly states that the only sanctions requested are (1) a monetary sanction for the attorneys' fees incurred in obtaining the Financial Documents, (2) an order to 8650 Frisco and its attorneys to show cause as to why they should not be held in contempt, and (3) an order barring 8650 Frisco from conducting further discovery. *See* Motion Exhibit B at 6, 50. While such sanctions are admittedly harsh, they are not requests to strike 8650 Frisco's pleadings.

## II.    8650 Frisco has not shown irreparable harm.

8650 Frisco has shown that it disagrees with the trial court's orders. It has not shown that it faces irreparable harm unless the trial court's proceedings are stayed. Should the May 18, 2015 hearing go forward, 8650 Frisco is not threatened with the loss of any property, the expiration of any deadlines, or the striking of its pleadings. 8650 Frisco merely complains that, absent a stay, it will be required to appear at a hearing on a motion which 8650 Frisco believes it should win. If that were the standard for irreparable harm, every hearing could produce a petition for

4

writ of mandamus, and every petition for writ of mandamus would result in a stay of the trial court's proceedings.

## Conclusion

8650 Frisco has not accurately characterized this case, nor has it shown that failure to stay the trial court would cause it any harm. Los Cucos prays that the Court deny the Motion and grant Los Cucos all other relief to which it is entitled.

Respectfully submitted,

**Hawash Meade Gaston Neese & Cicack LLP**

*/s/ Samuel B. Haren*
Andrew K. Meade
State Bar No. 24032854
Samuel B. Haren
State Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
sharen@hmgnc.com

**Stephens & Domnitz, PLLC**

Kelly D. Stephens
State Bar No. 19158300
P.O. Box 79734
Houston, Texas 77279-9734
281-394-3287 (phone)
832-476-5460 (fax)
kstephens@stephensdomnitz.com

5

**Dykema Cox Smith**

David Kinder
State Bar No. 11432550
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
210-554-5500 (phone)
210-226-8395 (fax)

**Attorneys for Real Parties in Interest**

## Certificate of Compliance

Pursuant to Texas Rule of Appellate Procedure 9.4(*i*)(3), this document contains 1,062 words, not including portions excluded under Texas Rule of Appellate Procedure 9.4(*i*)(1).

*/s/ Samuel B. Haren*
Samuel B. Haren

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on the following via electronic service on May 8, 2015:

James C. Mosser
Nicholas D. Mosser
Paul J. Downey
Mosser Law PLLC
2805 Dallas Parkway, Suite 220
Plano, Texas 75093

*/s/ Samuel B. Haren*
Samuel B. Haren

| | |
|---|---|
| **Los Cucos Mexican Cafe VIII, Inc.; Los Cucos Mexican Cafe IV, Inc.; Manuel Cabrera; and Sergio Cabrera,** Plaintiffs | **In the District Court of** |
| v. | |
| **8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues,** Defendant | **Harris County, Texas** |
| | **133rd Judicial District** |

## Plaintiffs' Fourth Amended Petition

Plaintiffs Los Cucos Mexican Cafe VIII, Inc.; Los Cucos Mexican Cafe IV, Inc.; Manuel Cabrera; and Sergio Cabrera file this Fourth Amended Petition against defendants 8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes a/k/a Alex Nunes; and David Jeiel Rodrigues:

### Discovery Level

1. The plaintiffs intend to conduct discovery under Level 3 of Rule 190.3 of the Texas Rules of Civil Procedure.

2. The plaintiffs seek damages within the jurisdictional limits of this Court, including monetary relief over $1,000,000.

### Parties

3. Plaintiff, Los Cucos Mexican Cafe VIII, Inc. ("Los Cucos VIII"), is a Texas Corporation with its principal place of business in Houston, Harris County, Texas.

4. Plaintiff, Los Cucos Mexican Cafe IV, Inc. ("Los Cucos IV"), is a Texas Corporation with its principal place of business in Harris County, Texas.

Exhibit 1      A-1

5.    Plaintiff, Manuel Cabrera, is an individual who resides in Austin County, Texas.

6.    Plaintiff, Sergio Cabrera, is an individual who resides in Harris County, Texas.

7.    Defendant, 8650 Frisco, LLC ("8650 Frisco"), is a Texas limited liability company doing business as Estilo Gaucho Brazilian Steakhouse. It has been served and appeared herein.

8.    Defendant, Mandona, LLC ("Mandona"), is a Texas limited liability company. It has been served and appeared herein.

9.    Defendant, Galovelho, LLC ("Galovelho"), is a Texas limited liability company. It has been served and appeared herein.

10.    Defendant, Bahtche, LLC ("Bahtche"), is a Texas limited liability company. It has been served and appeared herein.

11.    Defendant, Claudio Nunes a/k/a Alex Nunes ("Nunes"), is an individual citizen of Texas. He has been served and appeared herein.

12.    Defendant, David Jeiel Rodrigues ("Rodrigues"), is an individual citizen of Texas. He has been served and appeared herein.

**Jurisdiction and Venue**

13.    Venue is proper under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because a substantial part of the events giving rise to this lawsuit occurred within this county. More specifically, Plaintiffs and Defendants negotiated and entered into, on the record, an agreement to settle the underlying complaints of Plaintiffs.  The negotiations leading to this settlement took place in the offices of Hawash, Meade Gaston Neese & Cicack, LLP, located at 2118 Smith Street, Houston, Harris County, Texas 77002.

14.    Jurisdiction is proper in this Court because the parties are all Texas residents and the amount in controversy is within the jurisdictional limits of the court.

2

**A-2**

## Factual Background

15. Manuel Cabrera and Sergio Cabrera are brothers with significant experience in creating, owning, and operating restaurants. The brothers are the owners and operators of a number of Mexican restaurants branded and known as "Los Cucos Mexican Cafe". Each restaurant is a separate legal entity registered with the State of Texas. Los Cucos VIII and Los Cucos IV are two of these entities.

16. Manuel Cabrera, Sergio Cabrera, David Jeiel Rodrigues, and Claudio Nunes (collective, the "Partners") agreed to create and operate a restaurant together. The plan and agreement was to create a Brazilian churrascaria-style restaurant in the Dallas, Texas area.

## The Underlying Background

### I.    The initial agreement.

17. After a series of negotiations, the Partners agreed that, *inter alia*: (1) each partner would obtain a 25% interest in the restaurant; (2) Manuel Cabrera and Sergio Cabrera (individually or through entities subject to their control) would contribute $600,000 for start-up capital; (3) David Jeiel Rodrigues and Claudio Nunes would contribute "sweat equity" by contributing personal services to the creation and operation of the restaurant; (4) Manuel Cabrera and Sergio Cabrera (individually or through entities subject to their control) would guarantee a lease for the restaurant; (5) all intellectual property, including trademarks would be held together with the restaurant; and (6) the Partners would share control, profits, and losses equally, but would receive no other salary from the restaurant.

### II.   Excess contributions and attempted renegotiation.

18. As work progressed on the restaurant, additional capital was needed. At David Jeiel Rodrigues' and Claudio Nunes' request, Manuel Cabrera and Sergio Cabrera (individually or through entities subject to their control) increased their contributions. The Cabreras' total

3

contributions eventually equaled more than $948,000. In addition, Manuel Cabrera and Sergio Cabrera (individually or through entities subject to their control) paid for and/or loaned equipment and furniture (including two large, expensive, and difficult-to-obtain Brazilian grills) worth over $60,000 to the enterprise.

19. To account for the unanticipated and additional contributions, the Partners attempted to negotiate a way for Manuel Cabrera and Sergio Cabrera (individually or through entities subject to their control) to receive preferential distributions until their initial contributions were repaid, subject to a small guaranteed distribution to David Jeiel Rodrigues and Claudio Nunes.

## III. Creation of the corporate structure and the Restaurant operations.

20. While the Partners negotiated a new distribution structure, the Partners agreed to form 8650 Frisco as the holding company for the Restaurant. Each of the four Partners was to own 25% of 8650 Frisco. David Jeiel Rodrigues and Claudio Nunes created defendant Galovelho to hold their 50% ownership interest in 8650 Frisco and the Restaurant. Sergio Cabrera and Manual Cabrera designated Los Cucos VIII to hold their 50% ownership interest in 8650 Frisco and the Restaurant.

21. 8650 Frisco then entered into a lease agreement for restaurant space, which Sergio Cabrera and Manuel Cabrera personally guaranteed.

22. David Jeiel Rodrigues and Claudio Nunes also desired to create a holding company to manage 8650 Frisco, but the parties did not agree on this structure. Instead, David Jeiel Rodrigues and Claudio Nunes formed Mandona to hold their collective 50% interest in the management of 8650 Frisco. Manuel Cabrera and Sergio Cabrera did not form a holding

4

company to hold their collective 50% control over 8650 Frisco, but continued to hold control in their individual capacities.

23.    The Partners then opened bank accounts for 8650 Frisco and granted all of the Partners access to the accounts.

24.    Despite lengthy negotiations, it now appears that the Partners were and are unable to agree on new distribution terms to take into account the Cabreras' (or entities under their control) substantial excess contributions. Instead, the Partners continued to operate as general partners or joint venturers up and until the defendants removed the plaintiffs from the enterprise and began to deny the plaintiffs' ownership interest in 8650 Frisco and the restaurant.

## IV.    The defendants' exclusion of the plaintiffs.

25.    Thanks to the contributions from Manuel Cabrera and Sergio Cabrera (individually or through entities subject to their control), 8650 Frisco opened the Estilo Gaucho Brazilian Steakhouse (the "Restaurant") in February of 2013.

26.    8650 Frisco is currently operated by David Jeiel Rodrigues and Claudio Nunes, individually, and (upon information and belief) through their entities Mandona, Galovelho, and Bahtche. The defendants have collectively refused to recognize the plaintiffs as co-owners of 8650 Frisco and the Restaurant, and have collectively excluded the plaintiffs from the operations, control, distributions, and profits of 8650 Frisco and the Restaurant.

27.    On information and belief, the defendants are distributing and/or diverting $40,000 or more per month from 8650 Frisco and the Restaurant to themselves or their designees. This is a violation of the parties' agreement and the defendants' duties as partners and/or joint venturers.

5

A-5

28. On further information and belief, the defendants registered the Restaurant's "Estilo Gaucho" trademark in the name of Bahtche and/or transferred the trademark to Bahtche without the plaintiffs' consent, in violation of the parties' agreement, and in breach of the defendants' duties as partners and/or joint venturers.

29. The plaintiffs have not received any distributions from the Restaurant's operations. Instead, the defendants have attempted to steal the plaintiffs' contributions by denying the plaintiffs any distributions or benefits of ownership. For example, the defendants have:

- transferred and/or laundered 8650 Frisco's cash from bank accounts to which the plaintiffs had access to new accounts to which the plaintiffs have no access;

- denied the plaintiffs access to 8650 Frisco's new bank accounts;

- failed to hold and/or give notice of meetings for 8650 Frisco;

- denied the plaintiffs access to the Restaurant's premises;

- fired 8650 Frisco's long-time accountant in favor of an account who, upon information and belief, is controlled by the defendants;

- denied the plaintiffs access to 8650 Frisco's books and records;

- denied the plaintiffs' interest in 8650 Frisco;

- distributed 8650 Frisco's cash to themselves but not to the plaintiffs;

- used equipment loaned to 8650 Frisco for the defendants' own benefit and refusing to return such equipment after demand was made; and

- transferring the assets of 8650 Frisco to entities owned or controlled by the defendants such as Bahtche.

30. The plaintiffs have made written demands for return of their money and property and for an accounting. The defendants have refused. Instead, the defendants continue to use the

6

plaintiffs' property and the fruits of the plaintiffs' contributions while simultaneously pretending that the plaintiffs are owed nothing in the transaction.

## The Underlying Causes of Action

31. The Plaintiffs sued Defendants alleging as causes of action: Breach of Contract, Coversion, Breach of Fiduciary Duty, Fraud/Fraudulent Inducement, Civil Conspiracy, Aiding, Abetting and Participation in Breach of Fiduciary Duty, Corporate Veil Piercing, Unjust Enrichment, Quantum Meruit, and Money Had and Received and for an Accounting.

## The Rule 11 Settlement Agreement

32. On or about August 5, 2014, while in the midst of taking the Court Ordered depositions of the Defendants at the offices of Hawash Meade Gaston Neese & Cicack, LLP, located at 2118 Smith Street, Houston, Harris County, Texas 77002, the parties entered into a settlement negotiation and on August 5, 2014, entered into a Rule 11 Settlement Agreement on the record. On August 6, 2014, the Defendants filed the Rule 11 Agreement with the Court.

33. The key elements of the agreement were:

A. Defendant 8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse was to pay to Cabrera Brothers II, LP, the amount of $900,000.00. The terms of payment were $60,000.00 was to be paid upon completion of the paperwork formalizing the settlement and the remainder to be paid monthly over 5 years at 6.7% interest. The initial payment under the note was to be due on October 1, 2014;

B. The Defendants further agreed to enter into "standard bank-type documentation" for the note to include a "note or promissory note, a deed of trust,

7

appropriate UC-1s to the extent Plaintiff determine it's necessary, an assignment of the lease and any assets related to the restaurant;

C. Time would be of essence in the agreements, and there would no cure time for any default;

D. In the case of default, there was to be a $10.00 paid up license fee for use of the name of the restaurant limited to that location; and,

E. The individual Defendants would not be liable under the note.

*Plaintiffs ask that the Court take judicial notice of the Transcript of the Rule 11 Settlement Statement filed in this cause by the Defendants on August 6, 2014.*

34. In August and September of 2014, Plaintiffs prepared and forwarded documents to the Defendants for review and suggestion. These documents included a formal settlement agreement which included the release of the individual Defendants, a promissory note, a UCC-1 listing as collateral for the note the assets of the restaurant; an assignment of interest in the lease, all as required by the Rule 11 Agreement.

35. The Defendants made a number of suggestions to change these documents, most of which were then included in the documents. Not all of Defendants changes were accepted, most notably Plaintiffs refused to accept a venue selection clause in the documents requiring venue of any action based on a breach of the agreement in Collin County, Texas.

36. Defendants have and continue to refuse to execute the settlement agreement or the note and security documents as required by the Rule 11 Agreement.

37. On or about October 1, 2014, the Defendants did make the $60,000.00 down payment and the first monthly payment under the proposed terms of the note. And, have made the monthly payments through the January 1, 2015 payment as of the time of this filing.

**A-8**

38.     On or about October 9, 2014, Plaintiffs notified the Defendants that they were in default of the settlement agreement absent the execution of the settlement agreement, the note, the deed of trust and the appropriate security documents.

39.     On or about October 10, 2014, Plaintiffs again notified the Defendants of the default, ask for additional complaints about the documents as provided and made an offer to change the documents to address the lone identified bone of contention (venue).

40.     To date, Defendants have not responded to this request.

**Causes of Action**

**I.      Breach of Contract**

41.     The Defendants have breached the Rule 11 Agreement by failing to execute the formal settlement agreement, the promissory note and the appropriate security documents as set forth in the Rule 11 Agreement.  By so doing, the Defendants are denying the Plaintiffs the protection agreed to in case of default under payments of the amount agreed to.

**Relief Requested**

42.     The plaintiffs seek judgment jointly and severally against all Defendants  for actual damages in the amount of $900,000.00 as agreed to under the Rule 11 agreement with credit to be given for the amounts paid.

43.     The plaintiffs seek their attorney's fees and costs incurred in prosecuting these claims.

44.     The plaintiffs seek pre and post judgment interest and the maximum rate allowed by law.

45.     The plaintiffs seek all other relief, at law or in equity, to which the plaintiffs may be entitled.

9

**A-9**

Respectfully Submitted,

**Stephens & Domnitz, PLLC**

*/s/ Kelly D. Stephens*
Kelly D. Stephens
State Bar No. 19158300
P.O. Box 79734
2118 Smith Street
Houston, Texas 77279-9734
281-394-3287 (phone)
832-476-5460 (fax)
kstephens@stephensdomnitz.com

**Hawash Meade Gaston
Neese & Cicack LLP**

Andrew K. Meade
State Bar No. 24032854
Jeremy M. Masten
State Bar No. 24083454
Samuel B. Haren
State Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
jmasten@hmgnc.com
sharen@hmgnc.com

**Cox Smith Matthews Incorporated**

David Kinder
State Bar No. 11432550
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
210-554-5500 (phone)
210-226-8395 (fax)
dkinder@coxsmith.com

**Attorneys for Plaintiffs**

10

**A-10**

## Certificate of Service

A true and correct copy of the foregoing has been served on all counsel of record via ECF on January 21, 2014.

James C. Mosser
Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Pky, Suite 290
Dallas, Texas 75248

*/s/ Kelly D Stephens*
Kelly D. Stephens

**A-11**

**Cause No. 2014-10896**

| | |
|---|---|
| Los Cucos Mexican Cafe VIII, Inc.; Los Cucos Mexican Cafe IV, Inc.; Manuel Cabrera; and Sergio Cabrera, Plaintiffs | In the District Court of |
| v. | |
| 8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues, Defendants | Harris County, Texas |
| | 133rd Judicial District |

### Supplement to Plaintiffs' Fourth Amended Petition

1.      Plaintiffs file this Supplement to Plaintiffs' Fourth Amended Petition (the "Supplement") to clarify the relief requested in Plaintiffs' Fourth Amended Petition (the "Petition"). The Supplement does not replace the Petition.

2.      Plaintiffs believe that the Petition gives fair notice of Plaintiffs' need and request for specific performance of the Rule 11 settlement agreement. *See Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied).

3.      Out of an abundance of caution, Plaintiffs hereby expressly plead that, in the event damages are not awarded in this action, (1) Defendants' refusal to execute a promissory note, settlement agreement, and other security agreements would constitute an irreparable harm by exposing Plaintiffs to a credit risk they specifically contracted to avoid and (2) Plaintiffs respectfully request that the Court order specific performance of Defendants' obligations under the Rule 11 settlement agreement, including, without limitation, the execution of a promissory note, a settlement agreement, and a dismissal of its pending claim for declaratory relief.

Exhibit 2                                                                          A-12

Respectfully submitted,

**Stephens & Domnitz, PLLC**

*/s/ Kelly D. Stephens*
Kelly D. Stephens
State Bar No. 19158300
P.O. Box 79734
2118 Smith Street
Houston, Texas 77279-9734
281-394-3287 (phone)
832-476-5460 (fax)
kstephens@stephensdomnitz.com

**Hawash Meade Gaston
Neese & Cicack LLP**

Andrew K. Meade
State Bar No. 24032854
Jeremy M. Masten
State Bar No. 24083454
Samuel B. Haren
State Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
jmasten@hmgnc.com
sharen@hmgnc.com

**Cox Smith Matthews Incorporated**

David Kinder
State Bar No. 11432550
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
210-554-4400 (phone)
210-226-8395 (fax)
dkinder@coxsmith.com

**Attorneys for Plaintiffs**

2

**A-13**

## Certificate of Service

A true and correct copy of the foregoing has been served on all counsel of record via electronic service on February 23, 2015.

James C. Mosser
Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Pky, Suite 290
Dallas, Texas 75248

*/s/ Samuel B. Haren*
Samuel B. Haren

3

**A-14**

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. 2014-10896


LOS CUCOS MEXICAN CAFE VIII(    IN THE DISTRICT COURT OF
INC.;LOS CUCOS MEXICAN     (
CAFE IV,INC.; MANUEL       (
CABRERA;AND SERGIO CABRERA (
                           (
VS.                        (    HARRIS COUNTY, TEXAS
                           (
8650 FRISCO,LLC D/B/A ESTILO
GAUCHO BRAZILIAN           (
STEAKHOUSE; MANDONA,LLC;    (
GALOVELHO,LLC;BAHTCHE,      (
LLC; CLAUDIO NUNES; AND     (
DAVID JEIEL RODRIGUES      (    133rd JUDICIAL DISTRICT

_____

**MOTION TO TRANSFER**
_____


        On the 23rd day of June, 2014, the following

proceedings came on to be held in the above-titled and

numbered cause before the Honorable JACLANEL McFARLAND,

Judge Presiding, held in Houston, Harris County, Texas.

   Proceedings reported by computerized stenotype

machine.




                    DARLENE STEIN
                OFFICIAL COURT REPORTER
                 133RD DISTRICT COURT
                 HARRIS COUNTY, TEXAS

_____

DARLENE STEIN

Exhibit 3                                        **A-15**

**APPEARANCES**

**Mr. Andrew K. Meade**
SBN 24032854
**Mr. Samuel B. Haren**
SBN 24059899
2118 Smith Street
Houston, Texas 77002
Telephone:  (713)658-9001
Telephone:  (713)658-9011 (Fax)
Attorney for Plaintiffs


**Mr. Nicholas D. Mosser**
SBN 24075405
**Mr. James Mosser**
SBN 00789784
17110 Dallas Parkway, Suite 290
Dallas, Texas97 75248
Telephone:)  (972)733-3223
Telephone:   (972)267-5072
Attorney for Defendants

DARLENE  STEIN

**A-16**

CHRONOLOGICAL INDEX

**June 23, 2014**

                                           **PAGE**

**Proceedings................................    4**

**Argument by Mr. Meade......................    6**

**Argument by Mr. Mosser....................   11**

**Proceedings concluded.....................   25**

**Reporter's Certificate....................   26**

**( P R O C E E D I N G S )**

June 23, 2014

*THE COURT:* This is Cause No. 2014-10896. And if everyone would announce who they are and who they represent, please.

*MR. MEADE:* Andrew Meade and Sam Haran for the Plaintiffs.

*THE COURT:* Mr. Mosser, if you'll announce who you are and who you represent, please.

*MR. MOSSER:* I'm sorry?

*THE COURT:* Announce who you are and who you represent.

*MR. MOSSER:* Yes, ma'am. This is James Mosser, Mosser Law Firm, PLLC, appearing telephonically on behalf of all Defendants.

*THE COURT:* Okay. I will tell you that I don't have the motions in front of me. My law clerks have gone to get them. For some reason, even though you are on the docket, they thought it had been pulled. So, anyway, but I'm going to let y'all go ahead and start. I think it's Plaintiff's motions. So, I'm going to let them go ahead and start while the law clerks are bringing in the actual written motions.

*MR. MEADE:* All right. Your Honor, if

you'll recall, this is a -- my client supplied about $950,000 in some equipment for a restaurant --

*MR. MOSSER:* Your Honor, if he could get closer to the microphone or speak up louder, it would be easier to hear.

*THE COURT:* Yeah. Well, I'll put the phone a little closer. But, you know, have you got a storm in Dallas? Is that the problem or what? You know, when you don't show up, it's -- we can only do the best we can do.

You know, that's why when I practiced law, I didn't depend on Southwest. Now, going to committee meetings, I depended on Southwest a lot. I was on a lot of Baptist boards that met over on North Washington, the Baptist building. But when I had a case, I usually drove down the night before or drove up or drove west or east or wherever I was going.

*MR. MEADE:* And -- and for convenience, Your Honor, we will try to set hearings in the case on Fridays and Mondays to make that more convenient.

*THE COURT:* Well, we don't have hearings on Fridays. So, they have to be on Mondays.

*MR. MEADE:* Mondays.

And so, the situation that we've got here -- Your Honor will recall that we had previously

noticed depositions for early May of the Defendants, that those depositions had been quashed. So, we set a Motion to Compel. The Court ordered the depositions to occur in June. We agreed on dates that were put into the Court's order, which was June 9th and 10th for six depositions to occur.

On the Sunday before -- June 9th was a Monday. 10th was a Tuesday. On the Sunday before, Mr. Mosser left a message on Mr. Stephen's phone, saying that he wouldn't be attending the depositions nor would his clients because -- and they subsequently filed a motion. Mr. Mosser apparently has a nervous system injury of some sort that he came down with the day before the depositions. And there is nobody else within his four-person law firm who's qualified to sit in a chair and defend a deposition.

He then went and set his Motion to Transfer Venue, offered us some dates in late July that -- or -- that conflict with a trial that I have in Judge Englehart's court. And then when I rejected those dates, offered dates in August.

And we have run into a problem now, which is that I leave the country on Saturday for two and a half weeks. I get back and have five days to prepare for a week-long trial in Judge Englehart's court. And then at

the end of the week that I'm in trial with Judge Englehart is their Motion to Transfer Venue. We have taken the position, which is correct under the rules, that discovery should not be and cannot be, in fact, abated while a Motion to Transfer Venue is pending.

They have taken the position and even set for today and then withdrew a Motion to Stay all proceedings while they have the opportunity to have that Motion to Transfer Venue heard.

We're going to have to take these depositions before the Motion to Transfer Venue hearing. We need them ordered and compelled, and we need the Motion to Transfer Venue hearing pushed back till that can happen.

But we also need Mr. Mosser or his clients to pay the costs of the depositions that were ordered -- I took Certificates of Nonappearance on all six depositions -- and that they ought to have to bear the cost on each of those.

The next issue that we have is as you'll recall, we have an accountant that worked for the company in New Braunfels and then a new accountant in Dallas. We had the -- the letter and correspondence where they said, you know, turn over all records and destroy all in your possession. And -- and we had to move to compel the

DARLENE STEIN

**A-21**

accountant to produce the records from New Braunfels, and he did produce the records to us.

But we have also asked for certain financial records, including tax records and other financial documents from the Defendants themselves; and soon we will -- and, also, their new accountant, who will soon have to come down on a Motion to Compel, as well, although that's not part of today.

The -- the other issue that is part of today is their responses and objections to our requests for production, which deal with the financial and tax records.

Starting with the tax records, there are numerous reasons why as members of the company and -- that -- that we're entitled to the tax records of an LLC. First of all, the statute allows it.

Second, we need to prepare our own tax returns.

Third, how they chose to characterize our capital contributions, the proportion of what is characterized as a loan and capital contribution and all of that is going to be relevant to the parties' agreement or disagreement about our membership status and -- and how much money is owed in terms of -- our position is that part of the money was loaned and part of it was a capital

contribution, and -- and they may or may not disagree, although they haven't disclosed their theory of the case to us at all in any way.  That will be relevant, those tax records.

The other financial records, which include bank account statements, we're -- we're entitled to the books and records, again, of the company; but, also, these bank account statements are going to be relevant to whether distributions -- because under the -- under the limited liability company act, under the partners' oral agreement, and under the written agreements that were exchanged, we would be entitled to distributions of distributable cash.

None have been made to us.  We believe some have been made to the Defendants, substantial distributions, and that there is distributable cash.  We believe that, but we don't have the records to show it, and the bank statements will go a long ways towards that.

What we've met with to date is an objection every step of the way and resistance even to Court-ordered depositions.  And -- and the objection that was made, for example, to the accountant's records was that objection of privilege that the Texas courts don't recognize.  Well, it was made again in response to requests for production after the Court had already ruled on the objection in

DARLENE STEIN

**A-23**

relation to the accountant.

They made other objections; for example, objecting that the Texas Finance Code provides the exclusive means to get bank account statements, even bank account statements of a party.  I -- I assure you that I will go to the bank, under the Texas Finance Code, and get the bank statements separately.  But that doesn't alleviate the obligation of a party to produce those bank statements.

So, a recommendation in -- in one of my motions is really -- it's really -- we're asking for the relief but sort of recommending a path for the Court, would be to appoint a discovery master in the case.  I don't mind coming down here once a week, and I suspect we will be back here again in a week.  And I'll tell you why.

You know, we had these grills.  I -- I don't know if you remember the -- the unique grills. Well, we have reason to believe that the grills have been destroyed.  And I've asked for an inspection of the collateral, of -- of the property.  They haven't responded to it.  I'm going to be asking the Court for it and probably having to move it to compel.

When these depositions do occur, I suspect I'm going to meet with a series of objections and probably instructions to the witness not to answer and that sort of

thing. And I -- and we can have the depositions in your chambers. I leave it to the Court's discretion of how we deal with these issues; but I would rather, if we can avoid it -- and I -- I know that judges, including yourself, don't like us coming down here all the time on Motions to Compel. I would like to avoid them, if possible. And so, the appointment of a discovery master is one suggestion to do that.

And I'll let Mr. Mosser respond.

*THE COURT:* Mr. Mosser?

*MR. MOSSER:* Yes, ma'am.

*THE COURT:* You may respond.

Hello?

*MR. MOSSER:* Yes, ma'am. I'm right here.

*THE COURT:* Where -- you want to respond?

*MR. MOSSER:* Oh, yes, ma'am. I surely will. Thank you.

May it please the Court? Let me go backwards a little bit here. Let's start with the grills are being destroyed, which is a false statement made by counsel. It has become custom in this case. The problem is we sent notice to counsel that he should come and pick up the grills, and counsel told us they weren't going to pick up the grills.

So, we told them if they leave the grills

that they claim they loaned to my clients, we told them, If you don't pick them up, we'll just put them in storage; and you can pay the storage bill when you get here. Nobody said they were going to destroy them, and it's just outrageous that he would say those kinds of things.

As for bank accounts, the Finance Code does provide the method by which he can obtain the bank accounts. But let's assume he doesn't want to do that and I'm required to deliver bank accounts. If the Court will recall, he mentioned that he held a deposition on written questions for Mr. -- I can't remember the accountant's name -- Hal Holtman, I think -- to produce all the records he had related to anything with my clients.

Now, if you will recall from the -- the Temporary Injunction hearing, Mr. Holtman went and testified on everything we told him he shouldn't be testifying on; and then he subsequently, based on comment from counsel this morning, delivered all the documents he had to the Plaintiff's lawyers in this case. That includes the tax returns, all bank statements, all the income statements, all the financial statements, everything related to the business until Mr. Holtman was fired.

Now, the Court ordered that. Mr. Holtman turned them over, over our objection. So, I don't think

that we're required to produce records in a duplicitous manner that have already been produced by the accountant in this case.

And, secondly, those documents were produced to opposing counsel who has yet to this day served them on us. When he gets discovery from whatever source it's from, he's required to serve everybody in the lawsuit, all parties, a copy of that discovery. He has not done so. So, I don't have any.

Going back to the top of the complaint from opposing counsel, I'm 69 years old; and I can't help it if my sacral iliac joint gets sprained, inflamed, bruised, and strained. I can't do anything about that. We immediately notified, upon determination that I was immobile, that this deposition had to be reset or postponed.

I think it's outrageous that I can't even pick up the phone and call a counsel for a medical problem that he won't reset depositions for or even respond to the telephone calls. I think it's outrageous that they file motions claiming that they've had a conference with opposing counsel, which is plainly false. They didn't have any conference with us. In fact, they filed these motions and then claimed that they had a conference after they filed the motion.

As for offering dates, we offer to set a date in July; and understanding trial schedules, as I do, I was required to file a Motion to Continuance on -- let's see -- that date that he wanted to do these, the 16th, 17th, somewhere in there because I had a special setting. I had to go into that court and request the Court reset the special setting in that case because of my sacral iliac sprain.

I don't under -- I suppose five years ago when I had my quadruple bypass surgery, opposing counsel would complain because that was just an excuse. These are not excuses. These are real-live things. We've offered a second set of dates. Counsel didn't even respond to them.

Now, counsel also says that we don't -- we should take depositions to get proof for the Motion to Transfer Venue. I don't think the Motion to Transfer Venue is set for today, but he puts it in his -- in his response or his Third Amended Motion to Compel, and I don't understand. He believes that the testimony given in open court on the record and sworn to by his clients can't be used in Motion to Transfer Venue. At some point in time, the Court will have to rule on that motion; and I will be happy to defend that issue.

As for costs, counsel fails to properly prepare any cost statements, hasn't made any cost

DARLENE STEIN

**A-28**

statements, hasn't suffered from any problems other than my sacral iliac joint sprain; and I don't think he would like me sitting in his conference room, taking the narcotics that I was taking and the side effects that go with it.

So, he has all of the financial records we believe that exist, delivered by Holtman over our objection. He did not properly serve the accountant -- the new accountant in Texas, which is more than 150 miles and -- away, and he doesn't have a right to get anything from him.

And as for tax records from the LLC, they're not members. They never have been members. They're not members. They rejected the opportunity to become a member, and that's clear testimony in the Temporary Injunction hearing.

So, I think I've covered the waterfront. But as far as tax returns, the State of Texas has made very clear by the Supreme Court and the Court of Appeals in Houston -- I think every Court of Appeals has said it is an abuse of discretion requiring the disclosure of Federal income tax returns if other documents can provide the information necessary.

But in order to even search out and get that information, opposing counsel is required to provide

the relevancy and materiality that's necessary as to his claims. He has none. He hasn't presented any. He hasn't asked for any. He hasn't said a single word that shows that a tax return, a financial statement, or any of these other intrusive and burdensome matters are necessary for his claims. And the Court should deny his motions in total.

Thank you.

*THE COURT:* When do you want to take the depositions?

*MR. MEADE:* Well --

*MR. MOSSER:* I'm sorry, Judge?

*THE COURT:* I'm -- I'm asking your opposing counsel when he wants to take the depositions.

*MR. MEADE:* I knew you were going to ask that, and I think the simplest answer to that is before the Motion to Transfer Venue is heard.

*THE COURT:* Okay.

*MR. MEADE:* The more complex answer is after the week of the 21st of July because I have a trial that entire week. But we are set number one. So, we will go; and I will be done that week because it's a breach of contract case.

So, following that week, I only have one day that I have a -- I have a deposition currently set

that I'm defending on the 28th of July.  Otherwise, I am wide open to -- to take these depositions.

THE COURT:  Okay.  Counsel, you heard that, I assume.  So, pick a date after his trial in Judge Englehart's court and not on July -- what?

MR. MEADE:  28th.

THE COURT:  -- 28th that you can produce your people for depositions.

MR. MOSSER:  I'm looking at the calendar now, Judge.

THE COURT:  Okay.

MR. MOSSER:  I would recommend August 4th and 5th, and I -- I would like to also add, Judge, that four of the depositions that were set, two of them -- on two separate days, two of them were set at exactly the same time.  And then the next day, two more were set at exactly the same time, which I would discourage that concept as appropriate.

MR. MEADE:  And -- and here would be my response.  If Mr. Mosser would cooperate with me --

MR. MOSSER:  But the 4th and the 5th are good with me, Judge.

MR. MEADE:  If Mr. Mosser would cooperate with me a little bit and let me know -- these are an individual -- two individuals and four corporate

representatives who may be, and I suspect will be, those same individuals -- could all be taken possibly at the same time or concurrently with each other.  But Mr. Mosser hasn't identified who are -- who's going to be the corporate representative.  So, I don't know how else to do it.

If he will identify who will be the corporate representatives for those entities, I will notice the -- the depositions so that they don't conflict timewise with one other another.

*MR. MOSSER:*  As you previously noticed, the doc -- the areas of inquiry, Mr. Rodriguez will be the deponent.

*MR. MEADE:*  On all, Mr. Mosser?

*MR. MOSSER:*  Yes.

*MR. MEADE:*  Okay.  Then I will -- I will set it up so that they don't conflict with one another.

*MR. MOSSER:*  Thank you.

*THE COURT:*  Okay.  So, pick, the 4th of the 5th of August?

*MR. MEADE:*  It will be both, Your Honor.

*THE COURT:*  Oh, both.

*MR. MEADE:*  Yeah.

*THE COURT:*  Okay.  All right.  The depositions are set for the 4th and the 5th.  And

Plaintiff's counsel will send notice, but they are now set.  He'll send notice as to time and place, I assume, which I assume you've already -- where -- where are they going to be?

*MR. MEADE:*  Well, as Mr. Mosser doesn't have an office here in Houston --

*THE COURT:*  Okay.

*MR. MEADE:*  -- I'm just going to do them at my offices here in Houston, Your Honor.

*THE COURT:*  Right.  And I presume that's okay with you, Mr. Mosser?

*MR. MOSSER:*  Oh, yes, ma'am, that's fine with me.

*THE COURT:*  Okay.  Now, as to fees of the nonappearance, I'm not going to order anything at this time.  I will consider it later as the case progresses, depending on how discovery goes.  So, I will just hold that under advisement.

What else was there?

*MR. MEADE:*  The objections, which I think lie in the Third Motion to Compel, which are Motions to Compel the responses to discovery that ask for a variety -- it's -- it's a variety of financial information, including bank statements and -- and tax returns.

DARLENE STEIN

**A-33**

*THE COURT:* Mr. Mosser, have -- does your client have the bank statements?

*MR. MOSSER:* I'm sorry, Judge?

*THE COURT:* Does your client have the bank statements?

*MR. MOSSER:* I think Mr. Holtman has them, and opposing counsel has collected everything Holtman has. And I would like the Court to order opposing counsel to deliver those documents that he got from the third-party witness Holtman to us.

*THE COURT:* Well, let me ask -- that -- that wasn't my question.

*MR. MOSSER:* I understand.

*THE COURT:* My question is: Does your client have them?

*MR. MOSSER:* No. I think -- I think Holtman has them all.

*THE COURT:* So, your client didn't keep a copy?

*MR. MOSSER:* Nobody sends out copies of bank statements any more, Judge.

*THE COURT:* Sure they do. I get them every month.

*MR. MOSSER:* I appreciate that, Your Honor. Let me put it a different way. Many businesses

DARLENE STEIN

**A-34**

do not get bank statement in paper form.

THE COURT: Well, do they get them electronically where they can print them out?

MR. MOSSER: My understanding, Your Honor, is that Holtman has all the bank statements.

THE COURT: So, your client doesn't get the e-mail saying, Your bank statement is ready to be printed out; or they can't go in and print it out?

MR. MOSSER: I haven't made that particular inquiry.

THE COURT: Yeah.

MR. MOSSER: Because they're with the bank and the accountant.

THE COURT: Well, my guess is your client has access to them by -- if they -- if they're not like me and they don't pay to get a paper statement or get a paper statement, they get an e-mail saying, Your bank statement is online. And you just log in, and you can print it out.

MR. MOSSER: I understand what the Court is saying, but my suggestion is that they already have all of that stuff. They got it from Holtman.

MR. MEADE: Your Honor, if I -- if I could add one -- as Your Honor may recall, they -- the Defendants fired Mr. Holtman, who is the CPA, from the

company in March, terminated my client's access and his access to all of the bank accounts. Then -- then hired a new accountant located up in Dallas and identified him as the new CPA, to which Holtman was supposed to and did send all of the information.

As far as account statements, the -- it's an ongoing duty, in fact, and they -- they have the duty -- even if, in fact, we had gotten all of the information and -- and Mr. Mosser has just said he doesn't actually know what we've gotten. Even if had gotten all of the information, it wouldn't alleviate their responsibility to produce it, too, because, for example, we might be missing a page of a bank statement. We might want to use a 173, you know, authentication means for the documents.

But there are certainly post termination of Mr. Holtman, zero financial records that we have access to but that the Defendants have access, custody, and control over those documents exclusively; and that's what we're asking for.

*THE COURT:* Okay. So --

*MR. MEADE:* Their current accountant has all of it, and they have all of it.

*THE COURT:* All right.

*MR. MOSSER:* Well, we don't really know

that.

THE COURT: Well, I'm going to overrule your objections and tell you to produce it if it's available to you.

MR. MOSSER: From the time that Holtman was terminated? Because they already have everything else.

THE COURT: No. Just from what they've requested.

MR. MOSSER: And will you order them to deliver us what Holtman has?

MR. MEADE: I don't need to be ordered to, Your Honor. I will -- I haven't had him even ask me. If you send me a letter asking for it --

THE COURT: Well, he's asking now. Send it to him.

MR. MEADE: I'll send it to him, Your Honor.

THE COURT: Yeah. I'm not going to order him, but he -- he said on the record now he's going to send you copies of it.

MR. MEADE: Well, in fact, if it's easiest, I will upload it onto FPT link; and you can download it from your computer today.

THE COURT: You want to do that, Counsel?

MR. MOSSER:  Which kind of link?

THE COURT:  I don't know.  It's over my head.

MR. MEADE:  I will suggest a couple of means by which I can deliver the documents to you, Mr. Mosser.

THE COURT:  He will -- he will get them to you.

MR. MEADE:  You can choose the most convenient means to you.

THE COURT:  Okay.  On the -- I've looked at the interrogatories, your objections are overruled.

What else have we got?

MR. MEADE:  The requests for production objections that were --

THE COURT:  Yeah, and they're overruled, also.

Anything else?

MR. MEADE:  And -- nothing else unless Your Honor -- and I -- and from what Your Honor said earlier, I think you're not inclined to appoint a master at this --

THE COURT:  I'm not.

MR. MEADE:  -- point in the discovery. So, I won't --

DARLENE STEIN

**A-38**

THE COURT:  And we will reset --

MR. MEADE:  -- belabor the point.

THE COURT:  -- the motion for change of venue until after the deposition.

MR. MEADE:  Thank you, Your Honor. Nothing else today.

THE COURT:  Anything else?

MR. MOSSER:  No, Your Honor.

THE COURT:  Counsel, I hope you feel better.  I know --

MR. MOSSER:  Thank you very much, Judge.

THE COURT:  I know how it feels to get older, but...

MR. MOSSER:  I appreciate it, Judge.

THE COURT:  Okay.  Thank you.

MR. MOSSER:  Yes, ma'am.

MR. MEADE:  Thank you.  Have a good week, Your Honor.

THE COURT:  Thank you.

(Proceedings concluded.)

DARLENE STEIN

**A-39**

STATE OF TEXAS

COUNTY OF HARRIS

I, DARLENE STEIN, Official Court Reporter in and for the 133rd District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $312.00 and was paid by Mr. Andrew Meade.

/s/Darlene Stein_____
DARLENE STEIN, CSR
Texas CSR 2557
Official Court Reporter
133rd District Court
Harris County, Texas
201 Caroline, 11th Floor
Houston, Texas 77002
Telephone: (713) 368-6402
Expiration: 12/31/2014

DARLENE STEIN

**A-40**

Cause No. 2014-10896

LOS CUCOS MEXICAN CAFE VIII, §  IN THE DISTRICT COURT OF
INC.; LOS CUCOS MEXICAN CAFE IV, §
INC.; MANUEL CABRERA; AND §
SERGIO CABRERA, §
§
Plaintiffs, §
§
v. §  HARRIS COUNTY, TEXAS
§
8650 FRISCO, LLC D/B/A ESTILO §
GAUCHO BRAZILIAN STEAKHOUSE; §
MANDONA, LLC; GALOVELHO, LLC; §
BAHTCHE, LLC; CLAUDIO NUNES; and §
DAVID JEIEL RODRIGUES, §
§
Defendants. §  133rd JUDICIAL DISTRICT

## ORDER ON DEFENDANTS' MOTION TO STAY ALL MATTERS
## AND
## PLAINTIFFS' THIRD MOTION TO COMPEL

The Court, having considered Defendants' Motion to Stay All Matters and Plaintiffs'
Third Motion to Compel and the respective responses, arguments of counsel, and evidence, has
determined that Defendants' motion should be and is hereby DENIED and that Plaintiffs' motion
should be and is hereby GRANTED. Specifically:

The Court DENIES Defendants' request to stay all matters.

The Court hereby OVERRULES Defendants' objections to Plaintiffs' Requests for
Production Nos. 1, 2, 3, 4, 5, 7, and 8. IT IS ORDERED that Defendants shall produce all
documents responsive to Requests for Production Nos. 1, 2, 3, 4, 5, 7, and 8 within 24 hours of
the entry of this order.

The Court FINDS that Defendants' counsel has abused the discovery process in resisting
discovery and has determined that the following sanctions are appropriate, satisfy the legitimate

Exhibit 4                                                    **A-41**

purposes of discovery sanctions, and are neither more nor less stringent than necessary to accomplish those purposes.

Accordingly, IT IS ORDERED that all expenses of discovery associated with the underlying motion and the deposition of each of the Defendants in accordance with this order are charged to the MOSSER LAW FIRM. The MOSSER LAW FIRM shall pay to Plaintiffs' counsel $_____ within 10 days of the signing of this order.

IT IS FURTHER ORDERED that the following facts are ESTABLISHED for all purposes in this litigation: that Defendants have consented to venue in Harris County, Texas.

IT IS FURTHER ORDERED that failure to comply with this Order may result in the further imposition of sanctions or a holding of contempt, punishable by fine or imprisonment or both. The documents must be produced by Aug 1, 2014 at Plaintiff's attorney office at 5:00 P.M.

DATED: 7-28-2014 _____

_____
JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

A-42

3/30/2015 4 07 31 PM
Chris Daniel - District Clerk
Harris County
Envelope No 4698208
By GENTRY, EUNIECY M
Filed 3/30/2015 4 07 31 PM

CAUSE NO 2014-10896

| | | |
|---|---|---|
| LOS CUCOS MEXICAN CAFE VIII, INC , LOS CUCOS MEXICAN CAFE IV, INC , MANUEL CABRERA, and SERGIO CABRERA, *Plaintiffs* | § § § § § § | IN THE DISTRICT COURT OF |
| v | § § | HARRIS COUNTY, TEXAS |
| 8650 FRISCO, LLC D/B/A ESTILO GAUCHO BRAZILIAN STEAKHOUSE, MANDONA, LLC, GALOVELHO, LLC, BAHTCHE, LLC, CLAUDIO NUNES, and DAVID JEIEL RODRIGUES, *Defendants* | § § § § § § § | 133rd JUDICIAL DISTRICT |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER

On this day the Court came to consider Plaintiffs Second Motion to Enforce the Court's Order and for Sanctions (the "Motion") After considering the facts, law, and argument of counsel, the Court has decided to grant the Motion in part and deny the Motion in part

Defendants are ordered to produce all documents identified in the Court's July 28, 2014 Order on Defendants Motion to Stay All Matters and Plaintiffs' Third Motion to Compel This production must be made by 5 00 p m on Wednesday, April 1, 2015 to both Sam Haren and Kelly Stephens

Plaintiffs' and Defendants' requests for sanctions are denied

Signed on the __1__ day of __April_____, 2015

_____
Judge Presiding

Exhibit 5                    **A-43**

CAUSE NO 2014-10896

| | | |
|---|---|---|
| LOS CUCOS MEXICAN CAFE VIII, INC , LOS CUCOS MEXICAN CAFE IV, INC , MANUEL CABRERA, and SERGIO CABRERA, *Plaintiffs* | § § § § § § § | IN THE DISTRICT COURT OF |
| v | § § § | |
| 8650 FRISCO, LLC D/B/A ESTILO GAUCHO BRAZILIAN STEAKHOUSE, MANDONA, LLC, GALOVELHO, LLC, BAHTCHE, LLC, CLAUDIO NUNES, and DAVID JEIEL RODRIGUES, *Defendants* | § § § § § § § | HARRIS COUNTY, TEXAS

133rd JUDICIAL DISTRICT |

### Order Granting Plaintiffs' Third Motion To Enforce The Court's Order

On this day the Court came to consider Plaintiffs' Third Motion to Enforce the Court's Order (the "Motion") After considering the facts, law, and argument of counsel, the Court has decided to GRANT the Motion Defendants will produce all documents responsive to Requests for Production 1, 2, 3, 4, 5, 7, and 8 contained in Exhibit 1 to the Motion (the "Documents") This production must be made through hand delivery during normal business hours to Andrew Meade or Samuel Haren at HAWASH MEADE GASTON NEESE & CICACK LLP, 2118 Smith, Houston, Texas 77002

The Court further finds that Defendants violated three of the Court's prior orders by failing to produce responsive documents This misconduct is part of a larger pattern of improper objections, meritless motions, frivolous arguments, feigned ignorance of basic factual and legal issues, and dishonest gamesmanship in violation of Texas Rule of Civil Procedure 13 Previous warnings from the Court have been ineffective in forcing Defendants to comply with the Court's

Certified Document Number: 65208486 - Page 1 of 2

Exhibit 6                              A-44

orders or with Texas law, and another warning is unlikely to achieve better results Moreover, another warning would only encourage Defendants to continue their egregious behavior in the future

Accordingly, the Court imposes the following sanctions

- Defendants may not conduct additional discovery in this matter until a representative of 8650 Frisco, LLC signs a sworn affidavit of compliance with this order,

- Defendants shall pay $ _1,000,00_ to Plaintiffs for their costs incurred in securing production of the Documents, and

- the issue of whether Plaintiffs face irreparable harm from the lack of the note/security required by the parties' contract is conclusively established in Plaintiffs' favor

Should Defendants fail to comply with this order within forty-eight hours of the signature hereof, Defendants and their attorneys of record will be asked to personally appear and show cause as to why they should not be held in contempt of this Court

Signed on the _27_ day of _April_ _____, 2015

_[signature]_
Judge Presiding

2

**A-45**

Certified Document Number: 65208486 - Page 2 of 2

**Cause No. 2014-10896**

| | |
|---|---|
| Los Cucos Mexican Cafe VIII, Inc.; Los Cucos Mexican Cafe IV, Inc.; Manuel Cabrera; and Sergio Cabrera, Plaintiffs | In the District Court of |
| v. | |
| 8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues, Defendant | Harris County, Texas |
| | 133rd Judicial District |

### Plaintiffs' Fourth Motion to Enforce the Court's Order and for Sanctions

The Court has ordered Plaintiffs to produce certain financial documents on four separate occasions. Defendants have refused to do so. Plaintiffs request that the Court obviate the need for further document production by striking Defendants' pleadings.

### Background

At a June 23, 2014 hearing, the Court orally ordered Defendants to produce certain financial documents. Exhibit 1, Transcript of Motion to Compel Hearing at 23:2–9. Defendants pretended that, they "ha[d] never been served with an order from the court to produce documents," they were not required to do so. Exhibit 2 Letter from Mosser to Stephens. On July 28, 2014, the Court again ordered Defendants to produce all responsive documents "by August 1, 2014." Exhibit 3, Order on Plaintiffs' Third Motion to Compel. Defendants improperly served an inadequate production. On March 30, 2015, the Court ordered Defendants a third time to produce all responsive documents "by 5:00 p.m. on Wednesday, April 1, 2015." Exhibit 4, Order on Plaintiffs' Second Motion to Enforce the Court's Order. Defendants again violated the Court's order by making a woefully incomplete production.

Exhibit 7                                            A-46

On the morning of Monday, April 27, the Court ordered Defendants to (1) produce all responsive documents and (2) pay a $1,000 sanction. Exhibit 5, Order Granting Plaintiffs' Third Motion to Enforce the Court's Order. The Court further ordered that, "[s]hould Defendants fail to comply with this order within forty-eight hours of the signature hereof, Defendants and their attorneys of record will be asked to personally appear and show cause as to why they should be held in contempt of this Court." *Id.* Once again, Defendants ignored this order.

On Thursday, April 30, Plaintiffs informed Defendants of their failure to comply with the Court's order and demanded production of the documents and payment of the sanction before noon on Monday, May 4. Exhibit 6, Letter from Haren to Mosser. At 4:50 p.m. on Friday, May 1, Defendants sent the following response:

> Dear Mr. Stephens:
>
> We are in receipt of Mr. Haren's letter dated April 30, 2015. We have been served no signed orders of any court requiring date certain compliance or any other required action.
>
> Respectfully, *MOSSER LAW PLLC*
>
> /s/ Nicholas D. Mosser
> _____
> Nicholas D. Mosser

Exhibit 7, Letter from Mosser to Stephens. Even though the order was available from the Court's office and through the District Clerk's website, Plaintiffs forwarded a copy of the order to Defendants on Sunday, May 3. Exhibit 8, Letter from Haren to Mosser.

**Background**

The Court has ordered Defendants to produce certain documents on four separate occasions. Defendants have refused or failed to comply all four times. Defendants' most recent is excuse is that they were not "served" a copy of the Court's order. *See* Exhibit 7, Letter from Mosser to Stephens As the Court may recall, this was the same explanation Defendants offered

2

**A-47**

for their failure to comply with the original order compelling production. *See* Exhibit 2, Letter from Mosser to Stephens. This excuse was invalid both times it was made. Regardless of whether Defendants "served" a copy of the Court's order, "[t]he law charges all parties and their lawyers with notice of all orders and judgments that the court renders in the case." *Welborn Mortg. Corp. v. Knowles*, 854 S.W.2d 328, 331 (Tex. App.—Dallas 1993, writ denied). For this reason alone, Defendants are deemed to have known the contents of the Court's order.

Moreover, "[t]he law charges one who has knowledge of facts that would cause a prudent man to inquire further with notice of the facts that, by use of ordinary intelligence, he would have learned." *Id.* Defendants appeared at the April 27 hearing telephonically, so they were aware that the Court ordered them to produce documents and pay a sanction. Defendants were further aware that copies of the order could have been easily obtained by calling the Court's clerk or by visiting the District Clerk's website. A reasonably prudent attorney who was ordered to pay a sanction and produce documents would make an effort to obtain such orders rather than remaining deliberately ignorant.

Further, Defendants received actual notice at 1:57 p.m. on April 30 that the Court had signed an order requiring Defendants produce documents and pay a sanction within 48 hours. *See* Exhibit 6, Letter from Haren to Mosser. Thus, Defendants had at least 94 hours between receipt of actual notice of the terms of the Court's order and the filing of this motion.

As a sanction for Defendants' fourth failure to comply with the Court's order, Plaintiffs ask the Court to order that:

- Defendants' attorneys pay Plaintiffs a sanction for all attorneys' fees incurred in attempting to obtain the requested documents;

- Defendants and their attorneys appear and show cause as to why they should not be held in contempt; and

- Defendants be disallowed from conducting any discovery in this case.

**A-48**

Plaintiffs are hopeful that such a sanction will be sufficient to ensure future compliance with the Court's orders and Defendants' obligations under the Texas Rules of Civil Procedure.

## Conclusion

Defendants continue to ignore the Court's orders. Plaintiffs pray that the Court further sanction Defendants and order Defendants and their attorneys to show cause as to why they should not be held in contempt. Plaintiffs further pray for all other relief to which they are entitled.

Respectfully submitted,

**Hawash Meade Gaston**
**Neese & Cicack LLP**

*/s/ Samuel B. Haren*
Andrew K. Meade
State Bar No. 24032854
Jeremy M. Masten
State Bar No. 24083454
Samuel B. Haren
State Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
jmasten@hmgnc.com
sharen@hmgnc.com

**Stephens & Domnitz, PLLC**

Kelly D. Stephens
State Bar No. 19158300
P.O. Box 79734
Houston, Texas 77279-9734
281-394-3287 (phone)
832-476-5460 (fax)
kstephens@stephensdomnitz.com

4

**Cox Smith Matthews Incorporated**

David Kinder
State Bar No. 11432550
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
210-554-5500 (phone)
210-226-8395 (fax)

**Attorneys for Plaintiffs**

### Certificate of Conference

I sent two letters to opposing counsel in an effort to obtain the documents and payment without further judicial intervention. I further tripled the time for compliance from the two days allowed by the Court to six. Despite this, Defendants still have not complied with the Court's order.

*/s/ Samuel B. Haren*
Samuel B. Haren

### Certificate of Service

A true and correct copy of the foregoing has been served on all counsel of record via electronic service on May 4, 2015.

James C. Mosser
Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Pky, Suite 290
Dallas, Texas 75248

*/s/ Samuel B. Haren*
Samuel B. Haren

**A-50**

**REPORTER'S RECORD**
**VOLUME 1 OF 1 VOLUME**
**TRIAL COURT CAUSE NO. 2014-10896**

LOS CUCOS MEXICAN CAFE VIII(    IN THE DISTRICT COURT OF
INC.;LOS CUCOS MEXICAN      (
CAFE IV,INC.; MANUEL       (
CABRERA;AND SERGIO CABRERA (
                   (
VS.                  (    HARRIS COUNTY, TEXAS
                   (
8650 FRISCO,LLC D/B/A ESTILO
GAUCHO BRAZILIAN        (
STEAKHOUSE; MANDONA,LLC;    (
GALOVELHO,LLC;BAHTCHE,      (
LLC; CLAUDIO NUNES; AND     (
DAVID JEIEL RODRIGUES      (    133rd JUDICIAL DISTRICT

_____

**MOTION TO TRANSFER**

_____

On the 23rd day of June, 2014, the following

proceedings came on to be held in the above-titled and

numbered cause before the Honorable JACLANEL McFARLAND,

Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype

machine.

**DARLENE STEIN**
**OFFICIAL COURT REPORTER**
**133RD DISTRICT COURT**
**HARRIS COUNTY, TEXAS**

**APPEARANCES**

**Mr. Andrew K. Meade**
SBN 24032854
**Mr. Samuel B. Haren**
SBN 24059899
2118 Smith Street
Houston, Texas 77002
Telephone: (713)658-9001
Telephone: (713)658-9011 (Fax)
Attorney for Plaintiffs


**Mr. Nicholas D. Mosser**
SBN 24075405
**Mr. James Mosser**
SBN 00789784
17110 Dallas Parkway, Suite 290
Dallas, Texas97 75248
Telephone:) (972)733-3223
Telephone: (972)267-5072
Attorney for Defendants

DARLENE STEIN

**A-52**

CHRONOLOGICAL INDEX

June 23, 2014

PAGE

Proceedings............................. 4

Argument by Mr. Meade..................... 6

Argument by Mr. Mosser................... 11

Proceedings concluded.................... 25

Reporter's Certificate................... 26

**( P R O C E E D I N G S )**

June 23, 2014

*THE COURT:* This is Cause No. 2014-10896. And if everyone would announce who they are and who they represent, please.

*MR. MEADE:* Andrew Meade and Sam Haran for the Plaintiffs.

*THE COURT:* Mr. Mosser, if you'll announce who you are and who you represent, please.

*MR. MOSSER:* I'm sorry?

*THE COURT:* Announce who you are and who you represent.

*MR. MOSSER:* Yes, ma'am. This is James Mosser, Mosser Law Firm, PLLC, appearing telephonically on behalf of all Defendants.

*THE COURT:* Okay. I will tell you that I don't have the motions in front of me. My law clerks have gone to get them. For some reason, even though you are on the docket, they thought it had been pulled. So, anyway, but I'm going to let y'all go ahead and start. I think it's Plaintiff's motions. So, I'm going to let them go ahead and start while the law clerks are bringing in the actual written motions.

*MR. MEADE:* All right. Your Honor, if

you'll recall, this is a -- my client supplied about $950,000 in some equipment for a restaurant --

*MR. MOSSER:* Your Honor, if he could get closer to the microphone or speak up louder, it would be easier to hear.

*THE COURT:* Yeah. Well, I'll put the phone a little closer. But, you know, have you got a storm in Dallas? Is that the problem or what? You know, when you don't show up, it's -- we can only do the best we can do.

You know, that's why when I practiced law, I didn't depend on Southwest. Now, going to committee meetings, I depended on Southwest a lot. I was on a lot of Baptist boards that met over on North Washington, the Baptist building. But when I had a case, I usually drove down the night before or drove up or drove west or east or wherever I was going.

*MR. MEADE:* And -- and for convenience, Your Honor, we will try to set hearings in the case on Fridays and Mondays to make that more convenient.

*THE COURT:* Well, we don't have hearings on Fridays. So, they have to be on Mondays.

*MR. MEADE:* Mondays.

And so, the situation that we've got here -- Your Honor will recall that we had previously

DARLENE STEIN

**A-55**

noticed depositions for early May of the Defendants, that those depositions had been quashed. So, we set a Motion to Compel. The Court ordered the depositions to occur in June. We agreed on dates that were put into the Court's order, which was June 9th and 10th for six depositions to occur.

On the Sunday before -- June 9th was a Monday. 10th was a Tuesday. On the Sunday before, Mr. Mosser left a message on Mr. Stephen's phone, saying that he wouldn't be attending the depositions nor would his clients because -- and they subsequently filed a motion. Mr. Mosser apparently has a nervous system injury of some sort that he came down with the day before the depositions. And there is nobody else within his four-person law firm who's qualified to sit in a chair and defend a deposition.

He then went and set his Motion to Transfer Venue, offered us some dates in late July that -- or -- that conflict with a trial that I have in Judge Englehart's court. And then when I rejected those dates, offered dates in August.

And we have run into a problem now, which is that I leave the country on Saturday for two and a half weeks. I get back and have five days to prepare for a week-long trial in Judge Englehart's court. And then at

the end of the week that I'm in trial with Judge Englehart is their Motion to Transfer Venue. We have taken the position, which is correct under the rules, that discovery should not be and cannot be, in fact, abated while a Motion to Transfer Venue is pending.

They have taken the position and even set for today and then withdrew a Motion to Stay all proceedings while they have the opportunity to have that Motion to Transfer Venue heard.

We're going to have to take these depositions before the Motion to Transfer Venue hearing. We need them ordered and compelled, and we need the Motion to Transfer Venue hearing pushed back till that can happen.

But we also need Mr. Mosser or his clients to pay the costs of the depositions that were ordered -- I took Certificates of Nonappearance on all six depositions -- and that they ought to have to bear the cost on each of those.

The next issue that we have is as you'll recall, we have an accountant that worked for the company in New Braunfels and then a new accountant in Dallas. We had the -- the letter and correspondence where they said, you know, turn over all records and destroy all in your possession. And -- and we had to move to compel the

accountant to produce the records from New Braunfels, and he did produce the records to us.

But we have also asked for certain financial records, including tax records and other financial documents from the Defendants themselves; and soon we will -- and, also, their new accountant, who will soon have to come down on a Motion to Compel, as well, although that's not part of today.

The -- the other issue that is part of today is their responses and objections to our requests for production, which deal with the financial and tax records.

Starting with the tax records, there are numerous reasons why as members of the company and -- that -- that we're entitled to the tax records of an LLC. First of all, the statute allows it.

Second, we need to prepare our own tax returns.

Third, how they chose to characterize our capital contributions, the proportion of what is characterized as a loan and capital contribution and all of that is going to be relevant to the parties' agreement or disagreement about our membership status and -- and how much money is owed in terms of -- our position is that part of the money was loaned and part of it was a capital

contribution, and -- and they may or may not disagree, although they haven't disclosed their theory of the case to us at all in any way.  That will be relevant, those tax records.

The other financial records, which include bank account statements, we're -- we're entitled to the books and records, again, of the company; but, also, these bank account statements are going to be relevant to whether distributions -- because under the -- under the limited liability company act, under the partners' oral agreement, and under the written agreements that were exchanged, we would be entitled to distributions of distributable cash.

None have been made to us.  We believe some have been made to the Defendants, substantial distributions, and that there is distributable cash.  We believe that, but we don't have the records to show it, and the bank statements will go a long ways towards that.

What we've met with to date is an objection every step of the way and resistance even to Court-ordered depositions.  And -- and the objection that was made, for example, to the accountant's records was that objection of privilege that the Texas courts don't recognize.  Well, it was made again in response to requests for production after the Court had already ruled on the objection in

DARLENE STEIN

relation to the accountant.

They made other objections; for example, objecting that the Texas Finance Code provides the exclusive means to get bank account statements, even bank account statements of a party. I -- I assure you that I will go to the bank, under the Texas Finance Code, and get the bank statements separately. But that doesn't alleviate the obligation of a party to produce those bank statements.

So, a recommendation in -- in one of my motions is really -- it's really -- we're asking for the relief but sort of recommending a path for the Court, would be to appoint a discovery master in the case. I don't mind coming down here once a week, and I suspect we will be back here again in a week. And I'll tell you why.

You know, we had these grills. I -- I don't know if you remember the -- the unique grills. Well, we have reason to believe that the grills have been destroyed. And I've asked for an inspection of the collateral, of -- of the property. They haven't responded to it. I'm going to be asking the Court for it and probably having to move it to compel.

When these depositions do occur, I suspect I'm going to meet with a series of objections and probably instructions to the witness not to answer and that sort of

thing. And I -- and we can have the depositions in your chambers. I leave it to the Court's discretion of how we deal with these issues; but I would rather, if we can avoid it -- and I -- I know that judges, including yourself, don't like us coming down here all the time on Motions to Compel. I would like to avoid them, if possible. And so, the appointment of a discovery master is one suggestion to do that.

And I'll let Mr. Mosser respond.

*THE COURT:* Mr. Mosser?

*MR. MOSSER:* Yes, ma'am.

*THE COURT:* You may respond.

Hello?

*MR. MOSSER:* Yes, ma'am. I'm right here.

*THE COURT:* Where -- you want to respond?

*MR. MOSSER:* Oh, yes, ma'am. I surely will. Thank you.

May it please the Court? Let me go backwards a little bit here. Let's start with the grills are being destroyed, which is a false statement made by counsel. It has become custom in this case. The problem is we sent notice to counsel that he should come and pick up the grills, and counsel told us they weren't going to pick up the grills.

So, we told them if they leave the grills

that they claim they loaned to my clients, we told them, If you don't pick them up, we'll just put them in storage; and you can pay the storage bill when you get here. Nobody said they were going to destroy them, and it's just outrageous that he would say those kinds of things.

As for bank accounts, the Finance Code does provide the method by which he can obtain the bank accounts. But let's assume he doesn't want to do that and I'm required to deliver bank accounts. If the Court will recall, he mentioned that he held a deposition on written questions for Mr. -- I can't remember the accountant's name -- Hal Holtman, I think -- to produce all the records he had related to anything with my clients.

Now, if you will recall from the -- the Temporary Injunction hearing, Mr. Holtman went and testified on everything we told him he shouldn't be testifying on; and then he subsequently, based on comment from counsel this morning, delivered all the documents he had to the Plaintiff's lawyers in this case. That includes the tax returns, all bank statements, all the income statements, all the financial statements, everything related to the business until Mr. Holtman was fired.

Now, the Court ordered that. Mr. Holtman turned them over, over our objection. So, I don't think

that we're required to produce records in a duplicitous manner that have already been produced by the accountant in this case.

And, secondly, those documents were produced to opposing counsel who has yet to this day served them on us. When he gets discovery from whatever source it's from, he's required to serve everybody in the lawsuit, all parties, a copy of that discovery. He has not done so. So, I don't have any.

Going back to the top of the complaint from opposing counsel, I'm 69 years old; and I can't help it if my sacral iliac joint gets sprained, inflamed, bruised, and strained. I can't do anything about that. We immediately notified, upon determination that I was immobile, that this deposition had to be reset or postponed.

I think it's outrageous that I can't even pick up the phone and call a counsel for a medical problem that he won't reset depositions for or even respond to the telephone calls. I think it's outrageous that they file motions claiming that they've had a conference with opposing counsel, which is plainly false. They didn't have any conference with us. In fact, they filed these motions and then claimed that they had a conference after they filed the motion.

DARLENE STEIN

As for offering dates, we offer to set a date in July; and understanding trial schedules, as I do, I was required to file a Motion to Continuance on -- let's see -- that date that he wanted to do these, the 16th, 17th, somewhere in there because I had a special setting. I had to go into that court and request the Court reset the special setting in that case because of my sacral iliac sprain.

I don't under -- I suppose five years ago when I had my quadruple bypass surgery, opposing counsel would complain because that was just an excuse. These are not excuses. These are real-live things. We've offered a second set of dates. Counsel didn't even respond to them.

Now, counsel also says that we don't -- we should take depositions to get proof for the Motion to Transfer Venue. I don't think the Motion to Transfer Venue is set for today, but he puts it in his -- in his response or his Third Amended Motion to Compel, and I don't understand. He believes that the testimony given in open court on the record and sworn to by his clients can't be used in Motion to Transfer Venue. At some point in time, the Court will have to rule on that motion; and I will be happy to defend that issue.

As for costs, counsel fails to properly prepare any cost statements, hasn't made any cost

statements, hasn't suffered from any problems other than my sacral iliac joint sprain; and I don't think he would like me sitting in his conference room, taking the narcotics that I was taking and the side effects that go with it.

So, he has all of the financial records we believe that exist, delivered by Holtman over our objection. He did not properly serve the accountant -- the new accountant in Texas, which is more than 150 miles and -- away, and he doesn't have a right to get anything from him.

And as for tax records from the LLC, they're not members. They never have been members. They're not members. They rejected the opportunity to become a member, and that's clear testimony in the Temporary Injunction hearing.

So, I think I've covered the waterfront. But as far as tax returns, the State of Texas has made very clear by the Supreme Court and the Court of Appeals in Houston -- I think every Court of Appeals has said it is an abuse of discretion requiring the disclosure of Federal income tax returns if other documents can provide the information necessary.

But in order to even search out and get that information, opposing counsel is required to provide

the relevancy and materiality that's necessary as to his claims. He has none. He hasn't presented any. He hasn't asked for any. He hasn't said a single word that shows that a tax return, a financial statement, or any of these other intrusive and burdensome matters are necessary for his claims. And the Court should deny his motions in total.

Thank you.

*THE COURT:* When do you want to take the depositions?

*MR. MEADE:* Well --

*MR. MOSSER:* I'm sorry, Judge?

*THE COURT:* I'm -- I'm asking your opposing counsel when he wants to take the depositions.

*MR. MEADE:* I knew you were going to ask that, and I think the simplest answer to that is before the Motion to Transfer Venue is heard.

*THE COURT:* Okay.

*MR. MEADE:* The more complex answer is after the week of the 21st of July because I have a trial that entire week. But we are set number one. So, we will go; and I will be done that week because it's a breach of contract case.

So, following that week, I only have one day that I have a -- I have a deposition currently set

that I'm defending on the 28th of July. Otherwise, I am wide open to -- to take these depositions.

THE COURT: Okay. Counsel, you heard that, I assume. So, pick a date after his trial in Judge Englehart's court and not on July -- what?

MR. MEADE: 28th.

THE COURT: -- 28th that you can produce your people for depositions.

MR. MOSSER: I'm looking at the calendar now, Judge.

THE COURT: Okay.

MR. MOSSER: I would recommend August 4th and 5th, and I -- I would like to also add, Judge, that four of the depositions that were set, two of them -- on two separate days, two of them were set at exactly the same time. And then the next day, two more were set at exactly the same time, which I would discourage that concept as appropriate.

MR. MEADE: And -- and here would be my response. If Mr. Mosser would cooperate with me --

MR. MOSSER: But the 4th and the 5th are good with me, Judge.

MR. MEADE: If Mr. Mosser would cooperate with me a little bit and let me know -- these are an individual -- two individuals and four corporate

representatives who may be, and I suspect will be, those same individuals -- could all be taken possibly at the same time or concurrently with each other. But Mr. Mosser hasn't identified who are -- who's going to be the corporate representative. So, I don't know how else to do it.

If he will identify who will be the corporate representatives for those entities, I will notice the -- the depositions so that they don't conflict timewise with one other another.

*MR. MOSSER:* As you previously noticed, the doc -- the areas of inquiry, Mr. Rodriguez will be the deponent.

*MR. MEADE:* On all, Mr. Mosser?

*MR. MOSSER:* Yes.

*MR. MEADE:* Okay. Then I will -- I will set it up so that they don't conflict with one another.

*MR. MOSSER:* Thank you.

*THE COURT:* Okay. So, pick, the 4th of the 5th of August?

*MR. MEADE:* It will be both, Your Honor.

*THE COURT:* Oh, both.

*MR. MEADE:* Yeah.

*THE COURT:* Okay. All right. The depositions are set for the 4th and the 5th. And

Plaintiff's counsel will send notice, but they are now set. He'll send notice as to time and place, I assume, which I assume you've already -- where -- where are they going to be?

*MR. MEADE:* Well, as Mr. Mosser doesn't have an office here in Houston --

*THE COURT:* Okay.

*MR. MEADE:* -- I'm just going to do them at my offices here in Houston, Your Honor.

*THE COURT:* Right. And I presume that's okay with you, Mr. Mosser?

*MR. MOSSER:* Oh, yes, ma'am, that's fine with me.

*THE COURT:* Okay. Now, as to fees of the nonappearance, I'm not going to order anything at this time. I will consider it later as the case progresses, depending on how discovery goes. So, I will just hold that under advisement.

What else was there?

*MR. MEADE:* The objections, which I think lie in the Third Motion to Compel, which are Motions to Compel the responses to discovery that ask for a variety -- it's -- it's a variety of financial information, including bank statements and -- and tax returns.

DARLENE STEIN

**A-69**

THE COURT: Mr. Mosser, have -- does your client have the bank statements?

MR. MOSSER: I'm sorry, Judge?

THE COURT: Does your client have the bank statements?

MR. MOSSER: I think Mr. Holtman has them, and opposing counsel has collected everything Holtman has. And I would like the Court to order opposing counsel to deliver those documents that he got from the third-party witness Holtman to us.

THE COURT: Well, let me ask -- that -- that wasn't my question.

MR. MOSSER: I understand.

THE COURT: My question is: Does your client have them?

MR. MOSSER: No. I think -- I think Holtman has them all.

THE COURT: So, your client didn't keep a copy?

MR. MOSSER: Nobody sends out copies of bank statements any more, Judge.

THE COURT: Sure they do. I get them every month.

MR. MOSSER: I appreciate that, Your Honor. Let me put it a different way. Many businesses

DARLENE STEIN

**A-70**

do not get bank statement in paper form.

THE COURT: Well, do they get them electronically where they can print them out?

MR. MOSSER: My understanding, Your Honor, is that Holtman has all the bank statements.

THE COURT: So, your client doesn't get the e-mail saying, Your bank statement is ready to be printed out; or they can't go in and print it out?

MR. MOSSER: I haven't made that particular inquiry.

THE COURT: Yeah.

MR. MOSSER: Because they're with the bank and the accountant.

THE COURT: Well, my guess is your client has access to them by -- if they -- if they're not like me and they don't pay to get a paper statement or get a paper statement, they get an e-mail saying, Your bank statement is online. And you just log in, and you can print it out.

MR. MOSSER: I understand what the Court is saying, but my suggestion is that they already have all of that stuff. They got it from Holtman.

MR. MEADE: Your Honor, if I -- if I could add one -- as Your Honor may recall, they -- the Defendants fired Mr. Holtman, who is the CPA, from the

company in March, terminated my client's access and his access to all of the bank accounts. Then -- then hired a new accountant located up in Dallas and identified him as the new CPA, to which Holtman was supposed to and did send all of the information.

As far as account statements, the -- it's an ongoing duty, in fact, and they -- they have the duty -- even if, in fact, we had gotten all of the information and -- and Mr. Mosser has just said he doesn't actually know what we've gotten. Even if had gotten all of the information, it wouldn't alleviate their responsibility to produce it, too, because, for example, we might be missing a page of a bank statement. We might want to use a 173, you know, authentication means for the documents.

But there are certainly post termination of Mr. Holtman, zero financial records that we have access to but that the Defendants have access, custody, and control over those documents exclusively; and that's what we're asking for.

*THE COURT:* Okay. So --

*MR. MEADE:* Their current accountant has all of it, and they have all of it.

*THE COURT:* All right.

*MR. MOSSER:* Well, we don't really know

that.

THE COURT: Well, I'm going to overrule your objections and tell you to produce it if it's available to you.

MR. MOSSER: From the time that Holtman was terminated? Because they already have everything else.

THE COURT: No. Just from what they've requested.

MR. MOSSER: And will you order them to deliver us what Holtman has?

MR. MEADE: I don't need to be ordered to, Your Honor. I will -- I haven't had him even ask me. If you send me a letter asking for it --

THE COURT: Well, he's asking now. Send it to him.

MR. MEADE: I'll send it to him, Your Honor.

THE COURT: Yeah. I'm not going to order him, but he -- he said on the record now he's going to send you copies of it.

MR. MEADE: Well, in fact, if it's easiest, I will upload it onto FPT link; and you can download it from your computer today.

THE COURT: You want to do that, Counsel?

MR. MOSSER:  Which kind of link?

THE COURT:  I don't know.  It's over my head.

MR. MEADE:  I will suggest a couple of means by which I can deliver the documents to you, Mr. Mosser.

THE COURT:  He will -- he will get them to you.

MR. MEADE:  You can choose the most convenient means to you.

THE COURT:  Okay.  On the -- I've looked at the interrogatories, your objections are overruled.

What else have we got?

MR. MEADE:  The requests for production objections that were --

THE COURT:  Yeah, and they're overruled, also.

Anything else?

MR. MEADE:  And -- nothing else unless Your Honor -- and I -- and from what Your Honor said earlier, I think you're not inclined to appoint a master at this --

THE COURT:  I'm not.

MR. MEADE:  -- point in the discovery. So, I won't --

DARLENE STEIN

**A-74**

THE COURT:  And we will reset --

MR. MEADE:  -- belabor the point.

THE COURT:  -- the motion for change of venue until after the deposition.

MR. MEADE:  Thank you, Your Honor. Nothing else today.

THE COURT:  Anything else?

MR. MOSSER:  No, Your Honor.

THE COURT:  Counsel, I hope you feel better.  I know --

MR. MOSSER:  Thank you very much, Judge.

THE COURT:  I know how it feels to get older, but...

MR. MOSSER:  I appreciate it, Judge.

THE COURT:  Okay.  Thank you.

MR. MOSSER:  Yes, ma'am.

MR. MEADE:  Thank you.  Have a good week, Your Honor.

THE COURT:  Thank you.

(Proceedings concluded.)

STATE OF TEXAS

COUNTY OF HARRIS

I, DARLENE STEIN, Official Court Reporter in and for the 133rd District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $312.00 and was paid by Mr. Andrew Meade.

```
                            /s/Darlene Stein_____
                            DARLENE STEIN, CSR
                            Texas CSR 2557
                            Official Court Reporter
                            133rd District Court
                            Harris County, Texas
                            201 Caroline, 11th Floor
                            Houston, Texas 77002
                            Telephone:  (713) 368-6402
                            Expiration:  12/31/2014
```

DARLENE STEIN

**A-76**

# MOSSER LAW PLLC

17110 DALLAS PARKWAY, SUITE 290 • DALLAS, TEXAS 75248 • 972-733-3223 • FAX: 972-267-5072
MOSSERLAW.COM

July 12, 2014

**Via Facsimile: 832-476-5460**
Kelly Stephens
P.O. Box 79734
Houston, Texas 77279

RE: Los Cucos VIII, Inc. Et al., v. 8650 Frisco LLC, et al.

Dear Mr. Stephens:

Apparently my prior letter was too subtle, I will try to be more blunt.

There is no "currently scheduled August 1, 2014 inspection" because you have failed to serve a proper request pursuant to the rules.

We have never been served with an order from the court to produce documents. To the extent our objections were overruled, you are in possession of the responsive documents.

I will not withdraw my objection to your improper subpoena. To the extent Mr. Verucchi has documents, you have those documents in your possession.

Respectfully, *MOSSER LAW PLLC*

/s/ Nicholas D. Mosser
Nicholas D. Mosser

# Exhibit 2                    **A-77**

Cause No. 2014-10896

| | | |
|---|---|---|
| LOS CUCOS MEXICAN CAFE VIII, INC.; LOS CUCOS MEXICAN CAFE IV, INC.; MANUEL CABRERA; AND SERGIO CABRERA, | § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| 8650 FRISCO, LLC D/B/A ESTILO GAUCHO BRAZILIAN STEAKHOUSE; MANDONA, LLC; GALOVELHO, LLC; BAHTCHE, LLC; CLAUDIO NUNES; and DAVID JEIEL RODRIGUES, | § § § § § § | |
| Defendants. | § | 133rd JUDICIAL DISTRICT |

## ORDER ON DEFENDANTS' MOTION TO STAY ALL MATTERS AND PLAINTIFFS' THIRD MOTION TO COMPEL

The Court, having considered Defendants' Motion to Stay All Matters and Plaintiffs' Third Motion to Compel and the respective responses, arguments of counsel, and evidence, has determined that Defendants' motion should be and is hereby DENIED and that Plaintiffs' motion should be and is hereby GRANTED. Specifically:

The Court DENIES Defendants' request to stay all matters.

The Court hereby OVERRULES Defendants' objections to Plaintiffs' Requests for Production Nos. 1, 2, 3, 4, 5, 7, and 8. IT IS ORDERED that Defendants shall produce all documents responsive to Requests for Production Nos. 1, 2, 3, 4, 5, 7, and 8 within 24 hours of the entry of this order.

The Court FINDS that Defendants' counsel has abused the discovery process in resisting discovery and has determined that the following sanctions are appropriate, satisfy the legitimate

Exhibit 3

**A-78**

purposes of discovery sanctions, and are neither more nor less stringent than necessary to accomplish those purposes.

Accordingly, IT IS ORDERED that all expenses of discovery associated with the underlying motion and the deposition of each of the Defendants in accordance with this order are charged to the MOSSER LAW FIRM. The MOSSER LAW FIRM shall pay to Plaintiffs' counsel $_____ within 10 days of the signing of this order.

IT IS FURTHER ORDERED that the following facts are ESTABLISHED for all purposes in this litigation: that Defendants have consented to venue in Harris County, Texas.

IT IS FURTHER ORDERED that failure to comply with this Order may result in the further imposition of sanctions or a holding of contempt, punishable by fine or imprisonment or both. The documents must be produced by Aug 1, 2014 at Plaintiff's attorney's office at 5:00 P.M.

DATED: 7-28-2014 _____

_____
JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

**A-79**

3/30/2015 4 07 31 PM
Chris Daniel - District Clerk
Harris County
Envelope No 4698208
By GENTRY, EUNIECY M
Filed 3/30/2015 4 07 31 PM

CAUSE NO 2014-10896

| | | |
|---|---|---|
| LOS CUCOS MEXICAN CAFE VIII, INC , LOS CUCOS MEXICAN CAFE IV, INC , MANUEL CABRERA, and SERGIO CABRERA, | § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § § | |
| v | § § | HARRIS COUNTY, TEXAS |
| 8650 FRISCO, LLC D/B/A ESTILO GAUCHO BRAZILIAN STEAKHOUSE, MANDONA, LLC, GALOVELHO, LLC, BAHTCHE, LLC, CLAUDIO NUNES, and DAVID JEIEL RODRIGUES, | § § § § § § § | |
| *Defendants* | § | 133rd JUDICIAL DISTRICT |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER

On this day the Court came to consider Plaintiffs Second Motion to Enforce the Court's Order and for Sanctions (the "Motion") After considering the facts, law, and argument of counsel, the Court has decided to grant the Motion in part and deny the Motion in part

Defendants are ordered to produce all documents identified in the Court's July 28, 2014 Order on Defendants Motion to Stay All Matters and Plaintiffs' Third Motion to Compel This production must be made by 5 00 p m on Wednesday, April 1, 2015 to both Sam Haren and Kelly Stephens

Plaintiffs' and Defendants' requests for sanctions are denied

Signed on the ___1___ day of ___April___, 2015

_[signature]_

Judge Presiding

Exhibit 4

**A-80**

Unofficial Copy Office of Chris Daniel District Clerk

| | |
|---|---|
| LOS CUCOS MEXICAN CAFE VIII, INC , LOS CUCOS MEXICAN CAFE IV, INC , MANUEL CABRERA, and SERGIO CABRERA, *Plaintiffs* § § § § § § § § § | IN THE DISTRICT COURT OF |
| v § | |
| 8650 FRISCO, LLC D/B/A ESTILO GAUCHO BRAZILIAN STEAKHOUSE, MANDONA, LLC, GALOVELHO, LLC, BAHTCHE, LLC, CLAUDIO NUNES, and DAVID JEIEL RODRIGUES, *Defendants* § § § § § § § § § | HARRIS COUNTY, TEXAS 133rd JUDICIAL DISTRICT |



### Order Granting Plaintiffs' Third Motion To Enforce The Court's Order

On this day the Court came to consider Plaintiffs' Third Motion to Enforce the Court's Order (the "Motion") After considering the facts, law, and argument of counsel, the Court has decided to GRANT the Motion Defendants will produce all documents responsive to Requests for Production 1, 2, 3, 4, 5, 7, and 8 contained in Exhibit 1 to the Motion (the "Documents") This production must be made through hand delivery during normal business hours to Andrew Meade or Samuel Haren at HAWASH MEADE GASTON NEESE & CICACK LLP, 2118 Smith, Houston, Texas 77002

The Court further finds that Defendants violated three of the Court's prior orders by failing to produce responsive documents This misconduct is part of a larger pattern of improper objections, meritless motions, frivolous arguments, feigned ignorance of basic factual and legal issues, and dishonest gamesmanship in violation of Texas Rule of Civil Procedure 13 Previous warnings from the Court have been ineffective in forcing Defendants to comply with the Court's

Exhibit 5 **A-81**

orders or with Texas law, and another warning is unlikely to achieve better results. Moreover, another warning would only encourage Defendants to continue their egregious behavior in the future.

Accordingly, the Court imposes the following sanctions:

- Defendants may not conduct additional discovery in this matter until a representative of 8650 Frisco, LLC signs a sworn affidavit of compliance with this order;

- Defendants shall pay $ 1,000.00 to Plaintiffs for their costs incurred in securing production of the Documents; and

- the issue of whether Plaintiffs face irreparable harm from the lack of the note/security required by the parties' contract is conclusively established in Plaintiffs' favor.

Should Defendants fail to comply with this order within forty-eight hours of the signature hereof, Defendants and their attorneys of record will be asked to personally appear and show cause as to why they should not be held in contempt of this Court.

Signed on the 21 day of April, 2015

_Darlene Mcoal M Freeland_
Judge Presiding

Unofficial Copy Office of Chris Daniel District Clerk

2


### HawashMeade
HAWASH MEADE GASTON NEESE & CICACK LLP

**Samuel B. Haren**
sharen@hmgnc.com
713-658-9001 (phone)
713-658-9011 (fax)

April 30, 2015

*Via Facsimile:*
*(469) 626-1073*
Mr. James C. Mosser
Mr. Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Parkway, Suite 290
Dallas, Texas 75248

Re: Cause No. 2014-10896, *Los Cucos Mexican Cafe VIII, Inc.* et al. *v. 8650 Frisco, LLC* et al. in the 133rd Judicial District Court of Harris County, Texas

Dear Mr. Mosser:

As you aware, the Court granted Plaintiffs' Third Motion to Enforce the Court's Order and For Sanctions on April 27, 2015. In so doing, the Court ordered you and your client to (1) hand-deliver the requested documents to the offices of Hawash Meade Gaston Neese & Cicack LLP and (2) pay a $1,000 sanction to Plaintiffs. The Court further ordered that, "should Defendants fail to comply with this order within forty-eight hours of the signature hereof, Defendants and their attorneys of record will be asked to personally appear and show cause as to why they should not be held in contempt of this Court."

As of the transmission hereof, neither the document production nor the monetary sanction have been received. If we have not received the documents and payment by noon on Monday, May 4, 2015, we will be forced to file a fourth motion to enforce the Court's order and seek additional sanctions.

Yours truly,

Samuel B. Haren

Exhibit 6

**A-83**

# MOSSER LAW PLLC

2805 DALLAS PARKWAY, SUITE 222 • PLANO, TEXAS 75093 • 972-733-3223 • FAX: 469-626-1073
**MOSSERLAW.COM**

May 1, 2015

**<u>Via eFile</u>**
Kelly Stephens
P.O. Box 79734
Houston, Texas 77279
Telephone: 1-281-394-3287
Facsimile: 1-832-476-5460
kstephens@stephensdominitz.com

RE: Los Cucos VIII, Inc. Et al.,  v. 8650 Frisco LLC, et al.

Dear Mr. Stephens:

We are in receipt of Mr. Haren's letter dated April 30, 2015. We have been served no signed orders of any court requiring date certain compliance or any other required action.

Respectfully, **MOSSER LAW PLLC**

/s/ Nicholas D. Mosser
Nicholas D. Mosser

Exhibit 7                    **A-84**

 

**Samuel B. Haren**
sharen@hmgnc.com
713-658-9001 (phone)
713-658-9011 (fax)

May 3, 2015

*Via Facsimile:*
*(469) 626-1073*
Mr. James C. Mosser
Mr. Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Parkway, Suite 290
Dallas, Texas 75248

   Re: Cause No. 2014-10896, *Los Cucos Mexican Cafe VIII, Inc.* et al. *v. 8650 Frisco, LLC* et al. in the 133rd Judicial District Court of Harris County, Texas

Dear Mr. Mosser:

  The Court's order is attached. As you are aware, it was readily available to anyone from the Court's clerk and to any licensed attorney from the District Clerk's website. As stated in my previous letter, if you have not complied with the Court's order by noon on Monday, May 4, 2015, we will file a fourth motion to enforce the Court's order.

       Yours truly,

       Samuel B. Haren

Exhibit 8          **A-85**

| | | |
|---|---|---|
| LOS CUCOS MEXICAN CAFE VIII, INC , LOS CUCOS MEXICAN CAFE IV, INC , MANUEL CABRERA, and SERGIO CABRERA, *Plaintiffs* | § § § § § § § § | IN THE DISTRICT COURT OF |
| v | § § | |
| 8650 FRISCO, LLC D/B/A ESTILO GAUCHO BRAZILIAN STEAKHOUSE, MANDONA, LLC, GALOVELHO, LLC, BAHTCHE, LLC, CLAUDIO NUNES, and DAVID JEIEL RODRIGUES, *Defendants* | § § § § § § § § § § | HARRIS COUNTY, TEXAS 133rd JUDICIAL DISTRICT |



### Order Granting Plaintiffs' Third Motion To Enforce The Court's Order

On this day the Court came to consider Plaintiffs' Third Motion to Enforce the Court's Order (the "Motion") After considering the facts, law, and argument of counsel, the Court has decided to GRANT the Motion Defendants will produce all documents responsive to Requests for Production 1, 2, 3, 4, 5, 7, and 8 contained in Exhibit 1 to the Motion (the "Documents") This production must be made through hand delivery during normal business hours to Andrew Meade or Samuel Haten at HAWASH MEADE GASTON NEESE & CICACK LLP, 2118 Smith, Houston, Texas 77002

The Court further finds that Defendants violated three of the Court's prior orders by failing to produce responsive documents This misconduct is part of a larger pattern of improper objections, meritless motions, frivolous arguments, feigned ignorance of basic factual and legal issues, and dishonest gamesmanship in violation of Texas Rule of Civil Procedure 13 Previous warnings from the Court have been ineffective in forcing Defendants to comply with the Court's

**A-86**

orders or with Texas law, and another warning is unlikely to achieve better results. Moreover, another warning would only encourage Defendants to continue their egregious behavior in the future.

Accordingly, the Court imposes the following sanctions:

- Defendants may not conduct additional discovery in this matter until a representative of 8650 Frisco, LLC signs a sworn affidavit of compliance with this order;

- Defendants shall pay $ *1,000.00* to Plaintiffs for their costs incurred in securing production of the Documents; and

- the issue of whether Plaintiffs face irreparable harm from the lack of the note/security required by the parties' contract is conclusively established in Plaintiffs' favor.

Should Defendants fail to comply with this order within forty-eight hours of the signature hereof, Defendants and their attorneys of record will be asked to personally appear and show cause as to why they should not be held in contempt of this Court.

Signed on the *21* day of *April* , 2015

_____
Judge Presiding

Unofficial Copy Office of Chris Daniel District Clerk

2

**A-87**

| | |
|---|---|
| Los Cucos Mexican Cafe VIII, Inc.; Los Cucos Mexican Cafe IV, Inc.; Manuel Cabrera; and Sergio Cabrera, <br> Plaintiffs | **In the District Court of** |
| v. | **Harris County, Texas** |
| 8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues, <br> Defendant | **133rd Judicial District** |

### Order Granting Plaintiffs' Fourth Motion To Enforce The Court's Order

On this day the Court came to consider Plaintiffs' Fourth Motion to Enforce the Court's Order (the "Motion"). After considering the facts, law, and argument of counsel, the Court has decided to GRANT the Motion.

The Court finds that

- Defendants and their counsel have wasted substantial amounts of the Court's and Plaintiffs' time by filing frivolous motions, making bad-faith arguments, and feigning ignorance of basic factual and legal issues;

- Defendants and their counsel have violated their discovery obligations by lodging frivolous objections, making inadequate productions, refusing to comply with the Court's orders, and asking third parties to destroy evidence;

- Defendants' counsel has acted unprofessionally to the Court, the Court's staff, and Plaintiffs' counsel throughout this litigation;

- Defendants have failed or refused to comply with four prior orders from this Court; and

**A-88**

- Defendants did not comply with this Court's order even after sanctions were entered and a show cause order was threatened.

The Court hereby imposes the following sanctions:

- Defendants shall pay a sanction of $_____ to Plaintiffs. This sanction is based on the reasonable and necessary attorneys' fees incurred by Plaintiffs in attempting to secure production of the documents Defendants have failed to produce. This sanction is to be paid by cashier's check to Hawash Meade Gaston Neese & Cicack LLP's IOLTA Account. The check shall be hand-delivered to the offices of Hawash Meade Gaston Neese & Cicack LLP during normal business hours within forty-eight hours of the entry of this order.

- James Mosser, Nicholas Mosser, Claudio Nunes, and David Jeiel Rodrigues shall appear in this Court on the _____ day of _____, 2015 at __:_____ __.m. and show cause as to why they should not be held in contempt.

- Defendants shall not be entitled to conduct or participate in any further discovery in this case.

This order does not replace or supplant the Court's April 27, 2015 Order Granting Plaintiffs' Third Motion to Enforce the Court's Order. All sanctions and required imposed therein remain in force.

Signed at __:_____ __.m. on the _____ day of _____, 2015.


_____
Judge Presiding

2

**A-89**

| | |
|---|---|
| **Los Cucos Mexican Cafe VIII, Inc.;** **Los Cucos Mexican Cafe IV, Inc.;** **Manuel Cabrera; and Sergio Cabrera,** Plaintiffs | **In the District Court of** |
| v. | **Harris County, Texas** |
| **8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues,** Defendant | **133rd Judicial District** |

## Notice of Hearing

Please be advised that the Court will hold an oral hearing on Plaintiffs' Fourth Motion to Enforce the Court's Order and for Sanctions on **Monday, May 18, 2015, at 3:00 p.m**., in the 133rd Judicial District Court of Harris County, Texas.

Respectfully submitted,

**Hawash Meade Gaston**
**Neese & Cicack LLP**

*/s/ Samuel B. Haren*
Andrew K. Meade
State Bar No. 24032854
Jeremy M. Masten
State Bar No. 24083454
Samuel B. Haren
State Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
jmasten@hmgnc.com
sharen@hmgnc.com

**A-90**

**Stephens & Domnitz, PLLC**

Kelly D. Stephens
State Bar No. 19158300
P.O. Box 79734
Houston, Texas 77279-9734
281-394-3287 (phone)
832-476-5460 (fax)
kstephens@stephensdomnitz.com

**Cox Smith Matthews Incorporated**

David Kinder
State Bar No. 11432550
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
210-554-5500 (phone)
210-226-8395 (fax)

**Attorneys for Plaintiffs**

2

**A-91**

## Certificate of Service

A true and correct copy of the foregoing has been served on all counsel of record via electronic service on May 4, 2015.

James C. Mosser
Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Pky, Suite 290
Dallas, Texas 75248

*/s/ Samuel B. Haren*
Samuel B. Haren

**A-92**

| | |
|---|---|
| Los Cucos Mexican Cafe VIII, Inc.; Los Cucos Mexican Cafe IV, Inc.; Manuel Cabrera; and Sergio Cabrera, <br> Plaintiffs <br><br> v. <br><br> 8650 Frisco, LLC d/b/a Estilo Gaucho Brazilian Steakhouse; Mandona, LLC; Galovelho, LLC; Bahtche, LLC; Claudio Nunes; and David Jeiel Rodrigues, <br> Defendant | In the District Court of <br><br><br> Harris County, Texas <br><br><br> 133rd Judicial District |

## Notice of Hearing

Please be advised that the Court will hold an oral hearing on Plaintiffs' Fourth Motion to Enforce the Court's Order and for Sanctions on **Monday, May 18, 2015, at 3:00 p.m**., in the 133rd Judicial District Court of Harris County, Texas.

Respectfully submitted,

**Hawash Meade Gaston Neese & Cicack LLP**

*/s/ Samuel B. Haren*
Andrew K. Meade
State Bar No. 24032854
Jeremy M. Masten
State Bar No. 24083454
Samuel B. Haren
State Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
jmasten@hmgnc.com
sharen@hmgnc.com

Exhibit 8          **A-93**

**Stephens & Domnitz, PLLC**

Kelly D. Stephens
State Bar No. 19158300
P.O. Box 79734
Houston, Texas 77279-9734
281-394-3287 (phone)
832-476-5460 (fax)
kstephens@stephensdomnitz.com

**Cox Smith Matthews Incorporated**

David Kinder
State Bar No. 11432550
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
210-554-5500 (phone)
210-226-8395 (fax)

**Attorneys for Plaintiffs**

2

## Certificate of Service

A true and correct copy of the foregoing has been served on all counsel of record via electronic service on May 4, 2015.

James C. Mosser
Nicholas D. Mosser
Mosser Law PLLC
17110 Dallas Pky, Suite 290
Dallas, Texas 75248

/s/ Samuel B. Haren
Samuel B. Haren

**A-95**